## Solomon's Trust Estate.

Argued September 30, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ella Graubart,* with her *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*John G. Frazer,* with him *Charles Denby, Jr., T. W. Pomeroy, Jr.,* and *Reed, Smith, Shaw & McClay,* for trustee, appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 5, 1938:

Appellant's parents set up an inter vivos trust, the income to be paid to the settlors' three children for life, one-third to each child. It further provided: "The Donors shall have the power, at any time during their lifetime, by an instrument in writing delivered to the Trustee, to modify, alter or amend this agreement in whole or in part; . . ." The settlors, under this agreement, directed the trustee by letter to "pay to us the one-third" of the net income which had been paid to appellant. The trustee complied with this direction. Later the father died, and his widow thereafter directed the trustee to resume payment to appellant. After complying with this direction, the trustee was advised it could not legally pay this income to the son. To an account

filed complying therewith, the son filed exceptions which were dismissed. This appeal followed.

It is urged both parents merely wished to punish appellant temporarily, and intended to restore the income to him, but had neglected to do so. The effect of the letter of November 26, 1930, however, was not merely that of a temporary measure to punish the son, so that the income should become his at the death of the father and by direction of the mother. The letter does not so state, and the mother's subsequent explanation will not avoid its operation, under well settled principles. The letter itself determines the legal status of appellant; it is clear and unambiguous. The power to revoke is specifically referred to, and it is indicated clearly that the parents were exercising that very power. The words "until further notice" meant, of course, joint notice of mother and father.

The lower court held that the power to revoke was joint; that it was not coupled with an interest, as the creators of the trust were not beneficiaries, and that the right of survivorship did not exist. The mother's direction to restore the interest in the income to the son was of no effect as such, but constituted a gift to the son of her interest, effective as of the date it was executed.

Joint powers, not coupled with an interest, do not survive. The Act of May 3, 1855, P. L. 415, section 2, does not affect the question: it applies to joint trustees, preserving trusts despite the amotion or failure of a trustee. See *Croker v. Croker et al.*, 192 N. Y. S. 666.

It should not be in the power of either party after the death of the other to destroy the trust both created and both intended to subsist. If we held as appellant suggests that the power survived to the mother, it could be exercised to deprive the other children of their income. No trust jointly created would be secure under such a determination.

Decree affirmed at appellant's costs.