604 A.2d 263

**In re Revocation of Revocable Trust of Harold and Marie FELLMAN, dated December 13, 1989.**

**Appeal of Harold FELLMAN and Marie Fellman.**

Superior Court of Pennsylvania.

Argued Aug. 21, 1991.

Filed March 3, 1992.

578

William L. Stang, Pittsburgh, for appellants.

Maurice M. Braunstein, Pittsburgh, for participating party.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

In this proceeding to force a recalcitrant trustee to assist the settlors in terminating a revocable trust, the orphans' court denied relief and directed the parties to submit to arbitration the issue of the competency of the settlors. After careful review and for the following reasons, we reverse.

Harold and Marie Fellman, husband and wife, having created a revocable trust, transferred their assets to co-trustees, consisting of themselves and their nephew, Sidney J. Fellman, for the benefit of the settlors during their lifetimes. Paragraph 7 of the trust agreement provided that following the death of Harold and Marie Fellman, "the entire remaining trust fund after payment of [certain] special bequests set forth above in this § 7 shall be held and administered for the benefit of the Grantors' nephew, SIDNEY J. FELLMAN." The right to revoke the trust was reserved by the following language:

§ 1. *Rights of the Grantor During His Lifetime.*

The Grantor shall have the following rights while he is alive:

(a) The Grantor reserves the right at any time or times during his lifetime by written notice to the Trustee to:

(i) revoke all or any part of this Agreement;

(ii) withdraw all or any part of the assets belonging to the trust estate; or

(iii) alter or amend any term or provision of this Agreement, except the Grantor shall have no right or power to change the duties or immunities of the Trustee without the Trustee's written consent.

A complete revocation of this Agreement shall vest in the Grantor all assets then possessed by the Trustee. Upon the Grantor's request, the Trustee shall execute and deliver to the Grantor any and all instruments required to transfer to the Grantor any trust asset to which the Grantor may be entitled.

On July 18, 1990, Harold and Marie Fellman revoked the trust and elected to withdraw all assets belonging to the trust. They requested that Sidney J. Fellman join with them to "execute and deliver to the undersigned as grantors any and all instruments required to transfer to the Grantors all of the assets of the Trust." Sidney Fellman refused.

The settlors then caused a citation to be issued to Sidney Fellman directing him to show cause why he should not

assist in re-delivering the trust assets to Harold and Marie Fellman. Sidney answered by averring that the settlors were physically and/or mentally impaired and by moving for physical and mental examinations of the settlors. The orphans' court denied relief, holding that it lacked jurisdiction because of an arbitration clause in the trust agreement which provided as follows:

§ 29.  *Arbitration.*

Any controversy or claim arising out of or relating to this Trust Agreement, or any breach thereof, shall be to the extent permitted by law settled by arbitration in the City of Miami, Florida, in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

The above § 7 and § 28 require that a dispute concerning the competency of a beneficiary or Trustee be arbitrated. The Grantor recognizes that the issue of the competency of the Grantor, his spouse, his children and other descendants, all of whom are potential beneficiaries and Trustees hereunder, involves not only the financial affairs of the Trust but the family relationships among Grantor, his spouse, his children and other descendants and it his intention whenever possible to avoid litigation on the issue of competency and to resolve that issue entirely through the process of arbitration.

When the settlors' exceptions to the court's decree were dismissed, they appealed. They contend that: (1) they reserved the right to revoke the trust, and Sidney, a co-trustee, cannot prevent them from exercising the power so reserved, and (2) their competency is not an arbitrable issue.

■ In Pennsylvania, it is well settled that a settlor may revoke or amend a revocable trust in accordance with the terms of the trust. *In re Insurance Trust Agreement of Kaufmann*, 460 Pa. 24, 28, 331 A.2d 209, 211 (1975); *Damiani v. Lobasco*, 367 Pa. 1, 6, 79 A.2d 268, 271 (1951). A settlor has the power to revoke a trust if and to the extent he has reserved such power by the terms of the trust.

Restatement (Second) of Trusts § 330(a). However, if the settlor has reserved a "power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances." Restatement (Second) of Trusts § 330(j).

In the instant case, the power to revoke the trust was reserved clearly and unconditionally. It is equally clear that the settlors gave the necessary notice and otherwise proceeded as required by the terms of the trust agreement. It would appear, therefore, that the settlors effectively revoked the trust, and Sidney Fellman should have cooperated in terminating the same. He responds, however, by asserting that the settlors are incompetent to act.

■ As a general rule, the absolute right to revoke a revocable trust is subject to the limitation that the settlor must be competent at the time of acting to revoke the trust. In *Florida National Bank of Palm Beach County v. Genova*, 460 So.2d 895 (Fla.1984), the court expressed the principle as follows:

> The courts have no place in trying to save persons such as [the settlor], *the otherwise competent settlor of a revocable trust*, from what may or may not be her own imprudence with her own assets. When she created this trust, she provided a means to save herself from her own incompetence, and the courts can and should zealously protect her from her own mental incapacity. However, when she created this trust, she also reserved the absolute right to revoke *if she were not incompetent*. In order for this to remain a desirable feature of a trust instrument, the right to revoke should also be absolute.

*Id.* at 898 (emphasis added). Thus, "[a]lthough the settlor has reserved a power of revocation, he cannot revoke the trust if he lacks mental capacity at the time when he attempts to revoke it." Scott on Trusts, § 330 (1989). Court decisions are uniformly in accord. See: *Montana Conference of Seventh–Day Adventist Church v. Miller*, 192 Mont. 468, 628 P.2d 1100 (1981) (combination appointment of personal guardian and conservator for settlor's

estate does not make settlor incapable of revoking revocable trust where evidence established that settlor competent at time of revocation); *First National Bank of Cincinnati v. Oppenheimer*, 92 Ohio Law Abs. 233, 190 N.E.2d 70 (1963) (revocation ineffective where settlor was both mentally and physically incompetent to understand or transact business because of injuries sustained in automobile accident); *Kemmerer v. Kemmerer*, 74 Ohio Law Abs. 65, 139 N.E.2d 84 (1956) (ineffective revocation where settlor did not overcome presumption of insanity for reasonable length of time after prior adjudication of incompetency).

If the settlors in the instant case can be barred by incompetency from revoking the trust, in what forum should the issue of competency be determined? More specifically, is the alleged incompetency of the settlor an appropriate issue for arbitration? After careful consideration and review, we conclude that the settlor's alleged incompetency is not an appropriate issue for arbitration.

Arbitration agreements are generally encouraged as a prompt, economical and adequate solution of controversies. *See: Rodriguez de Ouijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). In the context of incompetency proceedings, however, individual rights are involved which, in Pennsylvania, are controlled by statute. Pursuant to the Decedents, Estates, and Fiduciaries Code at 20 Pa.C.S. § 5501 ("Code"), the Legislature has adopted a statutory framework which serves to protect an individual who may be incompetent. One such provision establishes the following safeguards: (a) notice to the alleged incompetent, (b) a hearing at which good cause for a finding of incompetence must be shown, (c) a hearing with a jury if requested by the alleged incompetent, and (d) the presence of the alleged incompetent at the hearing in the absence of exceptional circumstances. 20 Pa.C.S. § 5511. In the event incompetency is found to exist, the statute provides for the appointment of a guardian who is accountable to the court and who may be required to file a bond. See: 20 Pa.C.S. § 5515.

The importance of statutory incompetency proceedings was recognized by the Supreme Court in *In Re Myers Estate,* 395 Pa. 459, 150 A.2d 525 (1959), where the Court was called upon to interpret the Incompetents' Estates Act of 1955.[1] The Court said:

In reviewing the propriety of the action of the court below, we must bear in mind that this statute—as every other statute of like nature—which empowers a court to declare an individual mentally incompetent and to place such individual's business affairs in the hands of another for management and care is "a dangerous statute easily capable of abuse * * *." Mental capacity and competency are to be presumed and before any person shall be deprived of the right to handle his or her own property and manage his or her affairs there must be *clear* and *convincing* proof of mental incompetency and such proof must be *preponderating.*

*Id.,* 395 Pa. at 462, 150 A.2d at 526 (emphasis in original) (citations omitted).

The rights guaranteed by the Code include many of the essentials required by concepts of due process, including "notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 130, 394 A.2d 932, 945 (1978). However, in an arbitration proceeding, the rights protected by constitutional notions of due process or the Code are not guaranteed. In an arbitration proceeding, it is not unusual to find that the "rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Alexander v. Gardner–Denver Company,* 415 U.S. 36, 57–58, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147, 163 (1974).

1. Act of February 28, 1956, P.L. (1955) 1154, as amended by the Act of July 11, 1957, P.L. 794, 50 P.S. § 3101. This has been assimilated in Chapter 55 of the present Code entitled "Incompetents."

While there is no doubt that arbitration may be an effective and efficient mechanism for handling disputes in a variety of contexts, arbitration is not an appropriate vehicle for determining the incompetency of an individual. In a case in which it decided the arbitrability of a civil rights dispute, the Supreme Court of the United States stated as follows:

> *Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the resolution of rights created by Title VII.* This conclusion rests first on the special role of the arbitrator, whose task is to effectuate the intent of the parties rather than the requirements of enacted legislation. Where the collective-bargaining agreement conflicts with Title VII, the arbitration must follow the agreement. To be sure, the tension between contractual and statutory objectives may be mitigated where a collective-bargaining agreement contains provisions facially similar to those of Title VII. But other facts may still render arbitral processes comparatively inferior to judicial processes in the protection of Title VII rights. Among these is the fact that the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land. Parties usually choose an arbitrator because they trust his knowledge and judgment concerning the demands and norms of industrial relations. *On the other hand, the resolution of statutory or constitutional issues is a primary responsibility of courts,* and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts.
>
> Moreover, the factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are

often severely limited or unavailable. And as this Court has recognized, "[a]rbitrators have no obligation to the court to give their reasons for an award." Indeed, it is the informality of arbitral procedure that enables it to function as an efficient, inexpensive, and expeditious means for dispute resolution. This same characteristic, however, makes arbitration a less appropriate forum for final resolution of Title VII issues than the federal courts. *Alexander v. Gardner–Denver Company, supra* at 56–58, 94 S.Ct. at 1024–1025, 39 L.Ed.2d at 163–164. (emphasis added) (citations omitted) (footnotes omitted).

In our sister jurisdiction of New York, courts have refused to honor arbitration clauses in a variety of contexts for public policy reasons. See: *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976) (arbitrator's award of punitive damages as purely private remedy vacated as violative of public policy); *Matter of Aimcee Wholesale Corp. [Tomar Products, Inc.],* 21 N.Y.2d 621, 289 N.Y.S.2d 968, 969, 237 N.E.2d 223, 224 (1968) ("The enforcement of our State's antitrust policy cannot be left to commercial arbitration, which serves a vital and constructive role in the business world, but is not a fit instrument for the determination of antitrust controversies which are of such extreme importance to all of the people of this State."); *Durst v. Abrash,* 22 A.D.2d 39, 253 N.Y.S.2d 351, *aff'd,* 17 N.Y.2d 445, 266 N.Y.S.2d 806, 213 N.E.2d 887 (1965) (enforcement of usurious loan agreement); *Matter of Knickerbocker Agency [Holz],* 4 N.Y.2d 245, 173 N.Y.S.2d 602, 149 N.E.2d 885 (1958) (claim concerning liquidation of insolvent insurer); *Matter of Erdheim v. Selkowe,* 51 A.D.2d 705, 380 N.Y.S.2d 20 (1976) (matters of attorney discipline).

If we were to hold that issues of competency could appropriately be submitted to arbitration, we would be faced with several unwanted ramifications. In the instant case, for example, would a determination of the settlors' incompetency be entered as a final judgment in the records of the Court of Common Pleas? May the arbitrators ap-

point a guardian of the estate and of the person? If not, may a court rest the appointment of a guardian on the arbitrators' finding of incompetency or must a new court hearing be held? If so, may the guardian commit the incompetent to a hospital or select the type of medical treatment and lifestyle the incompetent will be permitted? How will the guardian's decisions be reviewed?

After careful consideration, we conclude that only the judicial system is equipped to handle incompetency hearings and the legal ramifications following a determination of incompetency. As a matter of public policy, issues of incompetency cannot be submitted to arbitration. To the extent that Paragraph 29 of the Fellman trust agreement provides for arbitration to determine the competency of the settlors, it cannot be enforced. Only a court of competent jurisdiction can adjudicate a person incompetent.

We hold, therefore, that the arbitration clause in the Fellman Trust Agreement is ineffective to deprive the Orphans' Court of Allegheny County of jurisdiction to hear and decide the issue of the settlors' alleged incompetency to revoke the trust,[2] if the parties are otherwise properly before the court. Our holding is no broader than that. This was the issue framed by the parties on appeal, and we make no attempt to render an advisory opinion regarding other issues which may or may nor hereafter arise in the Orphans' Court proceedings.[3]

Reversed and remanded for further proceedings. Jurisdiction is not retained.

JOHNSON, J., files a dissenting opinion.

2. This is an issue of Pennsylvania policy. Contrary to the argument made by the author of the dissenting opinion, it does not require an interpretation of Florida law.

3. After this opinion had been prepared, the parties advised the Court that terms of settlement had been agreed upon and requested leave to discontinue the appeal. Because of the lateness of the request, see: *Marino v. Marino,* 411 Pa.Super. 424, ——, 601 A.2d 1240, 1243 (1992) and because of the significant policy issue involved, i.e., the arbitrability of a person's alleged incompetency, we declined to grant permission to discontinue the appeal.

JOHNSON, Judge, dissenting.

The revocable trust agreement before us on this appeal was executed on December 13, 1989 at Palm Beach Gardens, Florida by Harold Fellman and Marie Fellman as Grantors. The agreement expressly provides that controversies arising out of the agreement shall be settled by arbitration in the City of Miami, Florida. It further expressly sets forth that the Grantors are residents of the State of Florida, and all questions shall be judged and resolved in accordance with Florida law.

The order which we are called upon to review does nothing more than deny a citation to certain parties who sought to have issues surrounding the revocation of the trust agreement litigated in Pennsylvania. I cannot find any abuse of discretion on the part of the Honorable Robert A. Kelly, who denied the citation, or the Orphans' Court Division of the Court of Common Pleas of Allegheny County, which dismissed the exceptions to Judge Kelly's order. I therefore must vigorously dissent from the Opinion of my colleague, Judge Wieand, which would flaunt both the express terms of the trust agreement and the expressed wishes of the parties.

Appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. *Lower Frederick Township v. Clemmer*, 518 Pa. 313, 322, 543 A.2d 502, 507 (1988); *Sack v. Feinman*, 489 Pa. 152, 165–66, 413 A.2d 1059, 1066 (1980) *decided after remand* 495 Pa. 100, 432 A.2d 971 (1981). The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Id.*

The revocable trust agreement sets forth, in § 25:

*§ 25. Fidelity Bond and Governing Law.*

. . . .

*This Agreement has been drawn and executed in the State of Florida, and the Grantor,* the Trustee, and most, if not all, of the prospective beneficiaries identified

herein *are residents of the State of Florida. All questions concerning the meaning, intention or validity of this Agreement, and all questions relating to performance hereunder, shall be judged and resolved in accordance with the laws of said state.*

The Harold and Marie Fellman Revocable Trust, dated December 13, 1989, page 26; Petition for Citation filed July 25, 1990, Exhibit A; R.R., page 36a. (emphasis added). At § 29, the agreement goes on to set forth, in pertinent part:

*§ 29. Arbitration.*

Any controversy or claim arising out of or relating to this Trust Agreement, or any breach thereof, shall be to the extent permitted by law settled by arbitration in the City of Miami, Florida, in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

The above § 7 and § 28 require that a dispute concerning the competency of a beneficiary or Trustee be arbitrated. *The Grantor recognizes that the issue of the competency of the Grantor, his spouse, his children and other descendants, all of whom are potential beneficiaries and Trustees hereunder, involves not only the financial affairs of the Trust but the family relationships among Grantor, his spouse, his children and other descendants and it is his intention whenever possible to avoid litigation on the issue of competency and to resolve that issue entirely through the process of arbitration.* *Id.* at pages 32–33; R.R. at pages 42a–43a (emphasis added).

In the case before us, Sidney J. Fellman, as a named Trustee, declined to cooperate in the redelivery of trust assets to Harold and Marie Fellman, separate Grantors under the Agreement and also co-trustees. Sidney Fellman advanced the alleged physical and/or mental impairment of the Grantors as the basis for his refusal to join in the reversion of the assets. As Judge Wieand observes in his majority opinion, Florida law requires that the grantor be

competent at the time the grantor acts to revoke a trust. *Florida National Bank of Palm Beach County v. Genova*, 460 So.2d 895 (Fla.1984).

The majority concludes that "only the judicial system is equipped to handle incompetency hearings and the legal ramifications following a determination of incompetency." It goes on to hold that, "as a matter of public policy, issues of incompetency cannot be submitted to arbitration." Majority opinion, 267. I must vigorously dissent.

First, neither the order of October 4, 1990 nor the order of November 8, 1990 directed the parties to submit to arbitration as the majority states in its opinion. The order of October 4, 1990 did nothing more than deny the citation sought by the petitioners. The order of November 8, 1990 merely dismissed the exceptions filed to the earlier order. The issue before this court therefore is not, as the majority would posit it, in what forum should the issue of competency be determined? The issue is more appropriately, whether the chancellor abused his discretion by refusing to issue a citation where the revocable trust agreement expressly provided that disputes concerning the competency of the Grantors must be decided under Florida law and through arbitration.

The Petition for Citation contains averments concerning the residency of the Grantors which is both expressly denied by the respondent Trustee and at odds with express averments contained in the Revocable Trust. The Petition does not set forth any reason why the citation was sought in Allegheny County, Pennsylvania in the face of those provisions of the agreement sought to be revoked which provide for the application of Florida law and the utilization of the Florida system of arbitration.

The trial court found no authority on the question of whether an arbitrator may determine issues of competency. I do not read the majority opinion of my colleague, Judge Wieand, as finding otherwise. The majority examines New York law on a variety of matters not involving competency, and cites to the United States Supreme Court for the

principle that the resolution of statutory and constitutional issues is a primary responsibility of courts. I find none of this helpful in determining whether, *under Florida law,* arbitration of the issue brought under the Fellman Trust can be accomplished.

The majority would reverse and remand "for further proceedings." The majority does not give any guidance to the trial court upon remand concerning the proper interpretation of the trust agreement. Is a Pennsylvania orphans' court judge to apply Pennsylvania law (just announced by this panel) in construing a Florida document which states, in no uncertain terms, that Florida law is to be applied? If Pennsylvania law is to be applied, would this be because it is the same as Florida law? Similar to Florida law? Or because we do not care how Florida would decide the same question? If the Allegheny County Orphans' Court Division tries to comply with the directive(?) of the majority, should it *only* decide the question of Grantor competency, since public policy would not thereby be offended, and leave other issues in dispute for resolution by the Florida arbitration system? Should the Pennsylvania trial court assume that, arguably, this court is seeking to announce Florida law? Need the Florida courts grant full faith and credit to any decision of this court which does not attempt to consider Florida law while interpreting public policy issues surrounding a Florida document?

Since Harold Fellman and Marie Fellman are now residents of Florida, how shall the Orphans' Court proceed to consider their competency? The Petition did *not* request a determination of competency. The prayer of that Petition merely seeks to force Sidney J. Fellman, as co-trustee, to cooperate in the redelivery of assets to the Grantors, and to compel Pittsburgh National Bank, Paine Weber, Landmark Savings and NCNB to redeliver assets to the Grantors. How does the court abuse its discretion in declining to do something that the petitioner has not even requested?

All of these questions could be avoided. On December 24, 1991, counsel for the Grantors, appellants, filed a Joint

Application to Discontinue Appeal with this court which was consented to by Sidney J. Fellman, appellee *pro se.* The Joint Application avers that all of the parties to this dispute have agreed to settle the matter and have entered into a written settlement agreement dated September 16, 1991. The only action taken by the orphans' court which we could review is its denial of the citation. Since it now appears that the Grantors do not require a citation, I would refrain from seeking to pronounce new law where it is neither invited nor required. *See* Pa.R.A.P. 1973, Discontinuance.

Hence, this dissent.