**Judith SCALFARO, Appellee,**

v.

**Richard RUDLOFF and James Rudloff.**

**Appeal of: Richard Rudloff, Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 2005.
Filed Sept. 30, 2005.

Joseph P. Caracappa, Fairless Hills, for appellant.

John J. Warenda, Jr., Morrisville, for Scalfaro, appellee.

BEFORE: TODD, KELLY, JJ., and McEWEN, P.J.E.

OPINION BY TODD, J.:

¶ 1 Richard Rudloff appeals the December 3, 2004 judgment of the Bucks County Court of Common Pleas voiding the deed transferring property from Appellant's father, Robert C. Rudloff ("Father"), to Appellant and his brother, James R. Rudloff, and ordering the distribution of the estate in accordance with a trust ("Trust") created during Father's marriage to Appellant's mother, Helen M. Rudloff ("Mother"). We are constrained to reverse.

¶ 2 The factual background and procedural history of this case were summarized by the trial court as follows:

Robert C. Rudloff and Helen M. Rudloff ["Rudloffs"], both now deceased, owned as joint tenants by the entirety property located at 37 Hilltop Rd., Lower Makefield, Pennsylvania ("Lower Makefield Property"). On August 11, [1993] the [Rudloffs] executed an Inter Vivos Declaration of Trust ("Trust") granting to the beneficiaries the Lower Makefield Property. The named beneficiaries of the Trust are the [Rudloffs'] three children, Judy Scalfaro, Richard E. Rudloff [Appellant] and James R. Rudloff.

Helen Rudloff died on October 19, 1996. On June 14, 2000 Robert C. Rudloff executed and filed a deed granting to Defendants [Richard and James Rudloff] as tenants in common the Lower Makefield Property under the belief that he was free to do so as sole trustee of the Trust. If valid, this action extinguished both the Trust and any property rights of the Plaintiff [Judith Scalfaro] in the Lower Makefield Property.

Robert C. Rudloff died on December 24, 2001. James Rudloff and his family have lived on the Lower Makefield Property since either June or July of 2000. Both Richard Rudloff and James Rudloff claim ownership of the Lower Makefield Property as grantees based on their father's conveyance of the property by deed dated June 14, 2000.

On June 16, 2003 Plaintiff filed a Complaint in an Action to Quiet Title in the Lower Makefield Property. Plaintiff alleges the Lower Makefield Property was the corpus of the trust entered into by the [Rudloffs] on August 11, 1993. Plaintiff further alleges that both her mother and father were joint trustees of the Trust, and that as the Trust was constructed, the consent of both parents was necessary to modify the Trust in any way. Consequently, Plaintiff avers that upon the death of her mother on October 19, 1993 the Trust as written was no longer modifiable, and therefore the conveyance of the Lower Makefield Property by Robert C. Rudloff to Defendants as sole trustee of the Trust on June 14, 2000 was void. Plaintiff demands the Deed dated June 14, 2000 transferring the Lower Makefield Property from Robert C. Rudloff to Defendants be cancelled, and the Lower Makefield Property be administered in accordance with the terms and conditions of the Trust.

On September 17, Defendants filed an Answer, New Matter and Counterclaim. Defendants alleged in their Answer that Robert C. Rudloff did not exceed his power as trustee of the Trust by conveying the Lower Makefield Property to Defendants on June 14, 2000. Defendants further allege that the Trust was revocable by Robert C. Rudloff *and/or* Helen C. Rudloff, and that Robert C. Rudloff's conveyance of the Lower Makefield Property by deed to Defendants constituted a valid revocation and extinguishment of the Trust. Defendant's Counterclaim alleges that by reason of the June 14, 2000 conveyance by Robert C. Rudloff title to the Lower Makefield Property lies in the Defendants and their claim is superior to any claim of the Plaintiff.

A bench trial was held on March 1, 2004. In its Order dated March 2, 2004 this Court directed that: (1) the June 14, 2000 Deed is void and shall be canceled on the records of the Bucks County Recorder of Deeds and (2) that the real property and premises known as Bucks County Uniform Parcel Identifier: Tax Parcel No. 20–17–009 (i.e. Lower Makefield Property) shall be administered in accordance with the terms and conditions of the August 11, 1993 Trust entered into by Helen M. Rudloff and Robert C. Rudloff.

Defendants filed a Motion for Post–Trial Relief on March 17, 2004 alleging the Court's failure to find that Robert C. Rudloff's conveyance of the subject premises to Richard and James Rudloff by Deed dated June 14, 2000 revoked the Trust justifies a new trial, or in the alternative judgment for Defendants on [their] counterclaim, thereby quieting title in the Lower Makefield Property in Defendants. The Motion for Post–Trial Relief [was] denied.

(Trial Court Opinion, 11/16/04, at 1–4 (footnotes omitted).)

¶ 3 Final judgment was entered on December 3, 2004, and this timely appeal followed, wherein Appellant presents a single issue for review:

> Whether a surviving trustee under a Declaration of Trust which was, by its express terms revocable, was denied the power to revoke the trust after the death of one trustee despite a trust provision that in the event of the death of one trustee, the survivor shall continue as sole trustee.

(Appellant's Brief at 3.)

¶ 4 This Court recognizes that "[t]he scope of appellate review of a decree in equity is limited. Absent an abuse of discretion or an error of law, we are bound to accept the findings of the trial court or

master." *Werner v. Werner*, 393 Pa.Super. 125, 128, 573 A.2d 1119, 1121 (1990).

¶5 As this Court previously has explained,

[i]n Pennsylvania, it is well settled that a settlor may revoke or amend a revocable trust in accordance with the terms of the trust. A settlor has the power to revoke a trust if and to the extent he has reserved such power by the terms of the trust. However, if the settlor has reserved a "power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances."

*In re Fellman*, 412 Pa.Super. 577, 580–81, 604 A.2d 263, 264–65 (1992) (internal citations omitted).

¶6 Paragraph 5 of the Trust at issue in this case provides:

We reserve unto ourselves the power and right at any time during our lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

(Declaration of Trust, 8/11/93, at 2.) Paragraph 7 of the Trust further provides: "In the event of physical or mental incapacity or death of one of us, the survivor shall continue as sole Trustee." (*Id.*)

¶7 In holding that Father did not have the power to revoke or amend the Trust, and, therefore, that his attempted conveyance of the property by deed was void, the trial court reasoned as follows:

The terms of the Trust clearly vested the power to terminate the Trust jointly in Robert C. and Helen M. Rudloff, and did not provide for one trustee to have the authority to change or revoke the Trust upon the death of the other joint trustee.

* * *

The use of the language "we," "ourselves" and "us" indicates the clear intent of the [Rudloffs] to act as joint trustees. The trustees jointly held the power to "amend or revoke" the instrument "in whole or in part" during *their* lifetimes. There was no provision stating that upon the death of one of the joint trustees the power to revoke or amend the Trust would then be vested solely in the surviving trustee.

Paragraph 7 of the Trust instrument in relevant part states: "in the event of physical or mental incapacity of or death of one of us, the survivor shall continue as sole Trustee." This paragraph does not state that the surviving trustee can thereafter *amend* the trust. It is not in dispute that upon the death of Helen M. Rudloff on October 19, 1996 Robert C. Rudloff became the sole trustee in accordance with said instrument. However, his role as sole trustee was as a fiduciary; he had no power or right to amend the Trust in his independent capacity.

(Trial Court Opinion, 11/16/04, at 5–6.) The trial court thus concluded that "[a]bsent evidence that such revocation or amending occurred previously, all power to revoke or amend the Trust terminated on the date of Helen M. Rudloff's death: October 19, 1996." (*Id.* at 6–7.)

¶8 While our research has disclosed no Pennsylvania case directly on point, the Supreme Court of Utah addressed a nearly identical situation in *Matter of Estate of West*, 948 P.2d 351 (Utah 1997). In that case, Herschel West, Sr. and his wife, Hazel, executed a Declaration

of Trust which provided that they held their home in trust for the benefit of themselves and after their deaths for their three adult children, the plaintiffs. The trust utilized language identical, in relevant part, to that at issue in the instant case. Specifically, Paragraph 5 of the trust document provided:

> We reserve unto ourselves the power and right at any time during our lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

(*Id.* at 354 (emphasis omitted).) Further, Paragraph 7 of the trust provided: "In the event of the physical or mental incapacity or death of one of us, the survivor shall continue as sole Trustee." *Id.*

¶ 9 Following Hazel's death, Herschel remarried, and thereafter executed a deed purporting to convey the property to himself and his second wife, Marilyn, the defendant. Following Herschel's death, his children filed suit against Marilyn alleging that the deed was voidable as a violation of Herschel's fiduciary duties as trustee.

¶ 10 In holding that the deed was valid, the Utah Supreme Court noted that the core issue was whether Herschel, either as sole trustee or surviving settlor, had the power to convey the property out of the trust to himself and Marilyn following Hazel's death, and that the determinative questions were (1) whether, under the terms of the trust, Herschel and Hazel were authorized as trustees to sell or otherwise dispose of the house and thereby revoke the trust; (2) whether Herschel became the sole trustee after Hazel's death, and succeeded to all the powers previously belonging to the joint trustees; and (3) whether Herschel could, consistent with his fiduciary duty as trustee, remove the house from the trust by quitclaiming it to himself and Marilyn. *Id.* at 353–54.

¶ 11 In concluding that under Paragraph 5 of the trust, Herschel and Hazel had the power as joint trustees to remove the house from the trust, the Court reasoned as follows:

> The first sentence must be interpreted as authorizing the settlors to amend or revoke the trust, since a reservation of power would apply to the settlors who have granted the property but not to the trustees who have received it. The second sentence empowers the trustees, not the settlors, to sell or dispose of the property in the trust, since by establishing the trust the settlors have conveyed away their legal title to the property. Such sale or disposition of property will "constitute" a revocation of the trust.

*Id.* at 354 (emphasis omitted). As we noted, the language of the declaration of trust in the instant case is identical to the above,[1] and we agree with the Utah Supreme Court's interpretation of the meaning of the language. Thus, in the instant case, Mother and Father had joint power as trustees to sell or dispose of the property, which would constitute a revocation of the trust.

---

1. The Court in *Matter of Estate of West* noted that the trust document therein was a formbook trust document, and that a "revocable trust in which the settlor/trustors are also the trustees and manage the trust for their own benefit during their lifetimes is a standard estate planning device ... [used to] avoid probate of the assets while allowing the settlor to retain control of the trust property during his or her own lifetime." *Estate of West,* 948 P.2d at 355.

¶ 12 Next, the Court in *Matter of Estate of West* determined that, upon Hazel's death, Herschel succeeded to all of the powers exercisable by the joint trustees, including the power to sell or dispose of the property, which worked as a revocation of the trust, stating:

> Although it is not clear that the surviving settlor may revoke the trust, the surviving trustee clearly may work a revocation by selling or disposing of the property.

> The sale or disposition of the trust property can be accomplished only by the trustee(s) in whom the legal title resides. Any power granted to Herschel and Hazel as trustees could be exercised by him unilaterally after the death of Hazel. The Utah Uniform Probate Code provides, "If two or more trustees are appointed to perform a trust, and if any of them … having accepted, ceases to be a trustee, the surviving or remaining trustees shall perform the trust and succeed to all the powers, duties, and discretionary authority given to the trustees jointly." Utah Code Ann. § 75–7–405(2). Likewise, the West Trust provides in paragraph 7, "In the event of the physical or mental incapacity or death of one of us, the survivor shall continue as sole Trustee." Thus, any rights given to Herschel and Hazel as co-trustees could be exercised by the survivor of them as sole trustee.

> Therefore, although the emphasized language of the second sentence of paragraph 5 refers to "the sale or disposition by us," this must be interpreted to mean the trustees while both are alive or the sole trustee when one of them has died. Otherwise, a sole trustee would have less power than the joint trustees held. That would be illogical, as nothing in the trust instrument denies to a sole trustee

any of the powers possessed by the joint trustees.

*Id.* (emphasis omitted).

¶ 13 Similarly, in Pennsylvania, "[a] substituted or succeeding trustee, except as otherwise provided by the trust instrument, shall have all the powers, duties and liabilities of the original trustee." 20 Pa. C.S.A. § 7135. Moreover, like the trust document in *Matter of Estate of West*, Paragraph 7 of the Trust in the instant case specifically provides that upon the death or mental incapacity of one of the settlors, the survivor shall continue as sole trustee. Thus, even if the trial court was correct in concluding that Father, as surviving settlor, could not revoke the trust, we hold that Father did have the power to sell or dispose of the assets of the Trust as sole trustee.

¶ 14 Finally, the Utah Supreme Court in *Matter of Estate of West* considered whether Herschel's removal of the property was consistent with his fiduciary duty as trustee. Noting that under Utah law, a trustee has " 'exclusive control of the trust property' and the power to 'dispose of [it] … at public or private sale' ", but that "a trustee's transfer of trust property to himself and/or his spouse may constitute a breach of the trustee's fiduciary duty and a voidable 'sale … affected by a substantial conflict of interest,' except to the extent that 'the trust expressly authorized the transaction,' " the Court determined that Herschel was not only the sole trustee, but also the sole beneficiary under the trust, as evidenced by the language which, *inter alia*, reserved unto Herschel and Hazel all rights to the income from the property. *Id.* at 355. Such is also the case herein.

¶ 15 As in the trust at issue in *Matter of Estate of West*, the trust document executed by the Rudloffs provides:

> NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that we

do hereby acknowledge and declare that we hold and will hold said real property and all our right, title and interest in and to said property and all furniture, fixtures and personal property situated therein on the date of the *death of the survivor of us,* IN TRUST

1. For the use and benefit of [the Rudloffs' three children].

(Declaration of Trust, 8/11/93, at 1 (emphasis added).) It is clear from the above language that "[t]he children's vested rights are subject to divestiture and will not ripen until the death of the surviving settlor," *Matter of Estate of West,* 948 P.2d at 356. Accordingly, under the Trust, Father, as sole trustee *and* sole beneficiary, could sell or dispose of the property without breaching his fiduciary duty, and Father's grant of the property to Appellant and James Rudloff constituted a revocation of the Trust. Thus, no trust existed at the time of Father's death, and Appellee had no remaining contingent interest.

¶ 16 We note that Appellee cites in her brief the decision of our Supreme Court in *In re Solomon's Estate,* 332 Pa. 462, 2 A.2d 825 (1938). In *In re Solomon's Estate,* the appellant's parents had set up an intervivos trust, the income to be divided equally among their three children for life. The trust provided that "The Donors shall have the power, at any time during their lifetime, by an instrument in writing delivered to the Trustee, to modify, alter or amend this agreement in whole or in part." *Id.* at 463, 2 A.2d at 826. At one point, with the purpose of punishing the appellant, the parents ordered the trustee to pay appellant's third of the income to them. After the appellant's father died, appellant's mother directed the trustee to resume payment to the appellant; the trustee, however, was advised that, under the trust, he could not legally pay the income to appellant.

¶ 17 On appeal, our Supreme Court affirmed the trial court's holding that "the power to revoke was joint," and that the mother's instructions alone were insufficient to restore the appellant's interest in the trust income, stating:

It should not be in the power of either party after the death of the other to destroy the trust both created and both intended to subsist. If we held as appellant suggests that the power survived to the mother, it could be exercised to deprive the other children of their income. No trust jointly created would be secure under such a determination.

(*Id.*)

¶ 18 However, in addition to the fact that the language above is mere dicta, we note that *In re Solomon's Estate* is distinguishable from the instant case in that the surviving donor/settler in that case, the mother, did not have the power to revoke or amend the trust as a trustee, as Father did in the instant case.

¶ 19 For the reasons set forth above, we conclude that Father had the right to grant to Appellant and James Rudloff the subject property, and that such grant extinguished the Trust and any property rights of Appellee. Accordingly, we hold that the trial court erred in voiding the June 14, 2000 deed and ordering the distribution of Father's estate in accordance with the Trust, and we thereby reverse the trial court's order.

¶ 20 Judgment **REVERSED.**

¶ 21 KELLY, J. files a Dissenting Opinion.

**DISSENTING OPINION BY KELLY, J.:**

¶ 1 I respectfully depart from the majority's disposition because I do not agree that the trustees possessed the power to revoke the trust. I believe a trustee's

power to revoke a trust must be explicitly granted by the trust document's language, and any doubt as to whom the trust document grants the power to revoke should be resolved in favor of the settlors. I also believe a joint right of revocation in settlors does not pass upon death of a settlor to the surviving settlor, and thus the trust becomes irrevocable. Hence, I dissent.

¶ 2 I reiterate the facts briefly. Mother and Father jointly executed Trust, in which Appellee and her two brothers were named beneficiaries. Mother and Father named only themselves as trustees. Mother passed away in 1996. In 2000, Father executed and filed a deed which granted Trust's property to Appellee's brothers alone as tenants in common. If valid, Father's action would extinguish Trust and deny Appellee any rights to Trust's property. In 2003, Appellee filed the instant action to quiet title. (Trial Court Opinion, dated November 16, 2004, at 1–3).

¶ 3 The learned majority presents a thoughtful and thorough analysis of the issue before us today.[2] The instant case involves a standard form-book trust, and therefore our decision may affect the interpretation of the myriad of trusts similar to the instant one. Analysis of this particular trust is difficult, as most of our caselaw interprets trusts whose settlors are not the trustees. However, I believe relevant caselaw and the Restatement (Second) of Trusts conflict with the majority's conclusions.

¶ 4 The first important step in determining the trustees' powers is to examine the settlors' intent within the context of the trust.

> When interpreting a trust instrument, the intent of the settlor is paramount and if that intent is not unlawful, it must prevail. To ascertain this intent, a court must examine the language of the document, the scheme of distribution, and the facts and the circumstances existing at the creation of the trust. The settlor's intent must be determined with such reasonable certainty that little doubt exists of this intent. If the settlor's intent remains uncertain, a court turns to canons of construction to supply the settlor's likely intent.

*Trust Agreement of Cyrus D. Jones Dated June 24, 1926*, 414 Pa.Super. 361, 607 A.2d 265, 268 (1992) (citations omitted). The Commonwealth of Pennsylvania permits settlors to determine the disposition of their estate and will honor their determination. *In re McCune*, 705 A.2d 861, 867 (Pa.Super.1997), *appeal denied*, 555 Pa. 720, 724 A.2d 935 (1998). Settlors may reserve for themselves the "power to alter, revoke or amend the trust in whole or in part." *In re Mason's Estate*, 395 Pa. 485, 488, 150 A.2d 542, 544 (1959).

¶ 5 The learned majority relies on the reasoning of the Utah Supreme Court in arriving at its decision today. *See Matter of Estate of West*, 948 P.2d 351 (Utah 1997). I disagree with the majority's reliance on the Utah Court's analysis in interpreting paragraph 5 of the trust agreement, because I believe that analysis is flawed. The interpretation of paragraph 5 is crucial to our disposition, as paragraph 7 explicitly provides the incapacity or death of a co-trustee would result in the survivor continuing as sole trustee. (Declaration of Trust at 2; R.R. at 4a). Therefore, because it is undisputed that Father, as surviving trustee, became sole trustee upon Mother's death, the scope of his rights as

---

**2.** I note both the trial court and Appellee argue Appellants waived their claim by failing to state sufficient grounds in their post-trial motions. (*See* Trial Court Opinion at 17);

(Appellee's Brief at 4). However, my reading of the post-trial motions indicates Appellants properly stated the grounds upon which they sought relief. (*See* Pa.R.C.P. 227.1(b)(2)).

sole trustee necessarily hinges on whether paragraph 5 grants trustees the power to revoke.

¶ 6 To reiterate, paragraph 5 of the trust provides:

> We reserve unto ourselves the power and right at any time during our lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

(Declaration of Trust at 2; R.R. at 4a). The Utah Court reviewed an identical form-book trust and concluded the first sentence of paragraph 5 refers to the decedents as settlors, and the second sentence refers to the decedents as trustees. *Matter of Estate of West, supra* at 354. The Utah Court based its conclusion on its determination that "by establishing the trust the settlors have conveyed away their legal title to the property." *Id.*

¶ 7 I cannot agree with the Utah Court's conclusion, or at least its effect in this Commonwealth. It is generally accepted that "[t]he settlor of a trust can reserve to himself any power which he desires with respect to the property, if the power is not illegal (see [Restatement (Second) of Trusts] §§ 60–65), and the reservation of the power will not of itself make the trust invalid. See § 57." Restatement (Second) of Trusts § 37 cmt. a (1959).[3] The Pennsylvania Supreme Court has stated:

> Where a person makes a deposit in a savings account in a bank in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.

*In re Shapley's Deed of Trust,* 353 Pa. 499, 503, 46 A.2d 227, 228 (1946).

¶ 8 I can discern no meaningful distinction between a settlor's right to revoke by withdrawing his entire savings account and a settlor's right to revoke by selling his property. The Utah Court and the majority do not cite any case that forbids settlors from reserving such right as an act of revocation, and my research of the relevant caselaw and Restatements reveals no authority forbidding such reservation of power.[4]

¶ 9 Instead, I believe settlors' rights are more accurately interpreted by the New York Supreme Court, Appellate Division, in *Gaigal v. Laub,* 236 A.D.2d 362, 653

---

**3.** I note the transfer of property took place in 2001, which was before the Restatement (Third) of Trusts was published in 2003. Therefore, although I would determine the Restatement (Third) also supports my analysis, I refer solely to the Restatement (Second) of Trusts.

**4.** I must further observe the distinction noted in the Restatement (Second) regarding legal title:

> Where the owner of property transfers the legal title together with the beneficial interest to another, he cannot ordinarily reserve to himself power to retake the property or to control the transferee in its use. ... [A] transfer in trust ... differs from a transfer of property by outright gift or sale. The settlor of a trust can reserve to himself any power which he desires with respect to the property ....

Restatement (Second) of Trusts § 37 cmt. a. Clearly, the Restatement (Second) does not contemplate a settlor's loss of legal right to transfer property if that power is expressly reserved.

N.Y.S.2d 637 (1997), *appeal denied*, 90 N.Y.2d 802, 660 N.Y.S.2d 712, 683 N.E.2d 335 (1997). In *Gaigal*, the New York Court stated:

A trustee, by definition, is the person who holds legal title to the trust corpus for the benefit of the beneficiaries. The creator of the trust is the person who makes the disposition of property to the trust. Although in this case the creators were also the trustees, the provision which granted the creators the power of revocation during their lifetime must be construed independently of the provision which made the surviving trustee the sole trustee. Pursuant to paragraph 5 of the declaration of trust dated June 15, 1981, the creators had the power to revoke the trust without the consent of the beneficiaries. However, following the death of one of the creators, the declaration of trust dated June 15, 1981, became irrevocable.

*Id.* at 638–39 (citations omitted). The *Gaigal* Court relied on New York statutes which specifically defined the roles of creators and trustees. *See id.* Although the statutes of this Commonwealth do not specifically define the roles of settlors and trustees, the relevant New York statutes are consistent with the Restatement Second's definition of the roles of settlors and trustees. *Compare id., with* Restatement (Second) of Trusts §§ 2, 3. The *Gaigal* Court recognized the settlors' power to revoke the trust, examined paragraph 5 of the trust separately from paragraph 7,[5] and determined the death of a settlor extinguished the surviving settlor's power to revoke the trust. *See Gaigal, supra* at

639. I find the *Gaigal* Court's reasoning influential. I would examine paragraph 5 of the instant trust separately from paragraph 7 and conclude the trust became irrevocable upon the death of Mother.

¶ 10 Furthermore, an interpretation of paragraph 5 within the context of the entire trust provides a different result than that of the Utah court. Paragraphs 4 and 6 provide:

4. We reserve unto ourselves the power and right during our lifetime (1) to place a mortgage or other lien upon the property, (2) to collect any rental or other income which may accrue from the trust property and to pay such income to ourselves as individuals. We shall be exclusively entitled to all income accruing from the trust property [during] our lifetime, and no beneficiary named herein shall have any claim upon any such income and/or profits distributed [to us].

\* \* \*

6. The death during our lifetime, or in a common accident or disaster with us, of all of the beneficiaries designated hereunder shall revoke such designation, and in the former event, we reserve the right to designate a new beneficiary. Should we for any reason fail to designate such new beneficiary, this trust shall terminate upon the death of the [survivor] of us and the trust property shall revert to the estate of such survivor.

(Declaration of Trust at 2; R.R. at 4a).[6] Paragraph 4 refers to the rights of the Rudloffs as settlors, as a settlor may reserve the right to receive income from the

---

**5.** Paragraph 7 of the *Gaigal* trust similarly stated, "In the event of the physical or mental incapacity or death of one of us, the survivor shall continue as sole trustee." *Gaigal, supra* at 362, 653 N.Y.S.2d 637.

**6.** Our copies of the trust document in the record and reproduced record contain blank streaks that block entire words and parts of words. The bracketed text is derived from the trust document in *Matter of Estate of West*, which used a like, standard form-book trust.

trust property. *See* Restatement (Second) of Trusts § 114. Paragraph 6 also refers to the Rudloffs as settlors, as a settlor may reserve the right to modify or revoke the trust and change beneficiaries. *See* Restatement (Second) of Trusts § 37. *See generally Schellentrager v. Tradesmens Nat'l Bank & Trust Co.*, 370 Pa. 501, 88 A.2d 773 (1952) (recognizing settlor's power to change beneficiaries). Paragraphs 4, 5, and 6 are composed of six sentences total, five of which clearly refer to rights reserved to the settlors. Therefore, the second sentence of paragraph 5 is preceded and followed by averments of the settlors' rights. Accordingly, I would conclude the context of the trust document indicates the second sentence of paragraph 5 refers to the Rudloffs' rights as settlors.[7]

¶ 11 I must also disagree with the majority's conclusion regarding the effect of our Supreme Court's words in *In re Solomon's Estate*, 332 Pa. 462, 2 A.2d 825 (1938). I agree with my learned colleagues that the concluding paragraph operates as dicta. *See id.* at 464, 2 A.2d at 826. However, I believe the *Solomon's Estate* Court states a sound and influential policy when it noted, "No trust jointly created would be secure under such a determination [that joint power to revoke may survive to the surviving settlor.]" *Id.* Indeed, the trust document does not accord either Mother or Father individually the power to revoke without the other's consent while both are alive. I cannot conclude such a right to revoke is automatically conferred upon the survivor of them without express language reserving that

right to the surviving settlor. Although the trust document creates the right for the surviving parent to act as sole trustee, "[a] trustee is in a fiduciary relation to the beneficiary" and to act in the best interest of all beneficiaries. Restatement (Second) of Trusts § 170(1) cmt. a. Clearly, the transfer of trust property to all but one beneficiary would not be acting in the best or fiduciary interest of the excluded beneficiary.[8]

¶ 12 Based upon the foregoing, it is my opinion that the right of revocation must be specifically accorded to trustees, and if there is doubt as to whom the right of revocation is accorded, the assumption should be that such right is reserved to the settlors. Additionally, I believe the joint right of revocation by settlors does not pass to the surviving settlor. In the instant case, I would determine the trust became irrevocable upon the death of Mother and affirm the judgment of the trial court. Accordingly, I respectfully dissent.

---

7. In my opinion, only paragraph 7 of the trust document specifically refers to the trustees' rights. Therefore, I believe the surviving trustee's powers are defined by paragraph 7 and Section 7133 of the Estates Code. *See* 20 Pa.C.S.A. § 7133.

8. To the extent the learned majority observes, "*In re Solomon's Estate* is distinguishable from the instant case in that the surviving donor/settlor in that case, the mother, did not have the power to revoke or amend the trust as a trustee, as Father did in the instant case," I do not agree, as I have concluded Father did not have the power to revoke as trustee. I therefore would view *In re Solomon's Estate* as relevant to the instant case.