## Deacon Estate

*Robert L. Bast* and *Wesley H. Caldwell,* of *Townsend, Elliott* and *Munson,* for accountants.

*George C. Denniston, Joseph I. Diamond, Cassin W. Craig* and *Walter M. Burkhardt,* for sons and their issue.

TAXIS, *J.,* May 12, 1977 — The reason or purpose for filing the account is the death of Catherine D. Palmer on May 29, 1976. She was the life beneficiary of the trust and because of her death it now terminates and is distributable by its terms to others. . . .

The trust was created by paragraph seven of testator's will which, in summary, provided that at the death of testator's wife, Sarah F. Deacon, the corpus of his estate should be divided into five equal parts or shares, one for each of his children. Catherine D. Palmer is one of those children.

Testator died in 1934, leaving a last will made in 1926. He had five children. Catherine D. Palmer has been noted. He left another daughter, Marion H. Burns, who is deceased, but left one child. In addition, testator had three sons, Benjamin H. Deacon, who died in 1965 leaving four children, Charles S. (Stanley) Deacon, who died in 1968, testate but without any issue. The third son, Joseph S. Deacon, who is one of the trustees in this proceeding as well as a beneficiary, survives, but has no issue.

The critical language here is in the last part of paragraph seven aforesaid, which reads as follows: ". . . Upon the death of the said Catherine D. Palmer, or in case the said Catherine D. Palmer does not survive my wife, I order and direct that the principal of the share held for her in Trust shall be paid over equally, share and share alike, to my

three sons or the survivors of them, free and clear of any restrictions."

This language poses a narrow but difficult issue of interpretation. All three sons survived the testator; one is now deceased having left four children, the second died without issue but left a will, and the third survives. Neither of the deceased sons, however, survived Catherine D. Palmer. We are thus faced with the question as to whether or not the reference to "the survivors of them" was intended by testator to refer to his death or to the death of his daughter, Catherine D. Palmer. We conclude the latter.

At one time, the presumption of early vesting which was part of the law of this Commonwealth might have indicated an opposite result. However, starting some years ago, our Supreme Court has progressively diminished the effect of artificial canons of construction, or presumptions of intent, and has mandated our courts to determine, from the document itself and from other circumstances known to a testator, his intent as expressed by the most natural and reasonable meaning of the words used: Jessup Est., 441 Pa. 365, 276 A.2d 499 (1970). The problem with canons of construction and arbitrary presumptions was that one which led to one result could always be met by one which led to the opposite result; here, for example, by applying the canon which presumed that a testator did not intend to distribute his estate to deceased persons.

As long ago as Fetrow's Est., 259 Pa. 89, 102 Atl. 410 (1917), the Supreme Court acknowledged that, although "surviving" following a prior gift generally refers to the death of the testator, the rule was not iron-clad if a contrary intent was ap-

parent. Later cases reiterated this rule, and even when canons and presumptions were more rigidly used in will construction than now, it was always recognized that a testator could change or alter the rules if he indicated that it was his intention to do so. In point of fact, many cases applying canons of construction to reach a result could also be well justified on the basis of an analysis of the testator's most probable intent. See Derham Est., 435 Pa. 590, 258 A.2d 650 (1969).

An analysis of the language used by the testator convinces the court that in drafting his will in 1926, he contemplated that the Catherine D. Palmer trust would ultimately be distributed to those of his sons who survived her. There was no substantial reason for testator to suppose that any of his three sons would not survive him, and in point of fact the first to die did survive him by thirty-one years. Conversely, it is entirely reasonable to believe that he knew that all of his children would not die at the same time, and that a son might or might not survive Catherine D. Palmer. Had he wished to create vested remainders in his three sons, he need have made no mention of "the survivors of them," but could simply have directed that the remainder go to the sons. The phrase as used by the testator, if it is to have meaning, must be to control distribution of the trust at the death of Catherine D. Palmer, since the phrase can only serve to cut down the class and not increase it.

Further, testator's intent is clarified by his provision that distribution was to occur ". . . upon the death of the said Catherine D. Palmer . . . ." He gave a life estate to Catherine D. Palmer, "as long as she may live." The "upon" phrase then becomes superfluous if it does not serve to measure the time

at which the distributees of the trust should be determined. A study of the will affirms the conclusion that wherever testator used the expression "surviving" or "survivor" he meant that circumstance to be determined at the expiration of the prior estate and not at the time of his death. An example appears in paragraph seven where the testator makes detailed provisions for his sons (not directly related to the present accounting), but refers to the survivors of them in a manner which refers to the survivors at the death of the preceding life tenant, namely, his wife. Testator also continued with provisions concerning one son which would apply if that son "shall predecease my wife," and such provisions would be inconsistent with a requirement that the son survive only the testator.

A comparable situation arose in Loving Est., 159 Pa. Superior Ct. 339, 48 A.2d 39 (1946), and the decision in that case supports the present conclusion. To have reached a different decision, the Superior Court (in reviewing the adjudication of the late Judge Hunter), would have had to find that the testator used the term "survivor" in two senses, in the same will and with respect to the same persons. Judge Hunter had said, in part: " 'I cannot believe in such repeated use of this word that he intended two periods of survivorship. Consistently he must have meant to give only to living persons and not to the estates of the dead. He intended to refer survivorship to the time of distribution of both principal and income.' "

Loving Estate also involved a determination that a result different from that reached would have caused testator's estate to pass out of his bloodline, and the court stated that it was convinced that

such a result was not in the mind of the testator. While this court does not think that this principle entirely governs this decision, it is nonetheless true that if a distributive share passes to the estate of Charles S. (Stanley) Deacon, deceased, it cannot remain any longer in the family as he has no issue, although he did die testate and his estate still exists. The intent of this testator was to benefit his wife, children and lineal descendents because, although some of his children have died without issue, at the time he made his will and even at his death, this was not necessarily to be the case.

For the foregoing reasons, the court therefore concludes that in the circumstances and as the facts appear, it was the express intent of the testator that the son or sons who survived Catherine D. Palmer should receive the principal distribution of this trust. It is also expressly ruled that the estate of Charles S. (Stanley) Deacon, deceased, has no interest in such distribution. There has been submitted to the court, however, an executed family agreement, relating only to this trust, which has been signed by Joseph G. Deacon, the only surviving son of decedent, and the four children of the deceased son, Benjamin H. Deacon. That agreement is incorporated herein by reference. Therein, Joseph F. Deacon, who by this adjudication is entitled to the entire principal of this trust, has agreed to divide the balance, one-half to himself and one-half in equal shares to the four children of his brother. This agreement was executed on December 3, 1976, and provides for the payment of $1,129.26 to Joseph G. Deacon (on account of expenditures made by him in the estate of Charles Stanley Deacon) and after the deduction of that sum, the balance is to be divided as aforesaid.

Therefore, subject to distributions heretofore properly made, the principal of this trust is awarded as follows: $1,129.26 to Joseph G. Deacon; one-half of the balance to Joseph G. Deacon, and the other one-half of the balance, in equal shares, to Benjamin H. Deacon, Jr., Anne Deacon Condon, Catherine Deacon Hays and Sara Deacon Powell, children of Benjamin H. Deacon. The income is awarded as suggested under the last paragraph of the petition for adjudication.

Power and authority are given the accountants to make the necessary assignments and transfers of the unconverted investment securities herein awarded in kind.

The account is confirmed, and it is hereby ordered and decreed that The Fidelity Bank and Joseph G. Deacon, surviving trustees, as aforesaid, forthwith pay the distributions herein awarded.

And now, May 12, 1977, this adjudication is confirmed nisi.