934 A.2d 1254

**Judith SCALFARO, Appellant,**

**v.**

**Richard RUDLOFF and James Rudloff, Appellees.**

Supreme Court of Pennsylvania.

Argued April 17, 2007.

Decided Nov. 21, 2007.

John Joseph Warenda, Jr., Esq., Morrisville, for Judith Scalfaro.

Joseph P. Caracappa, Esq., Jackson, Cook, Caracappa & Bloom, Fairless Hills, for Richard Rudloff.

Robert G. Moffett, Esq., Quakertown, for James Rudloff.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Chief Justice CAPPY.[1]

In this appeal, we consider whether a trust instrument gave a joint settlor, who was also a joint trustee, the authority to revoke an *inter vivos* trust when he became the sole trustee upon the death of his spouse. For the following reasons, we conclude that the trust instrument is clear and unambiguous in stating that the power of revocation was to be exercised by the settlors jointly and not by either one of them as sole trustee. Accordingly, the order of the Superior Court is reversed.

Robert C. Rudloff ("Mr.[ ]Rudloff") and Helen M. Rudloff ("Mrs. Rudloff") (collectively, the "Rudloffs") owned property ("Property") located in Bucks County, Pennsylvania as tenants by the entireties. On August 11, 1993, the Rudloffs executed a form-book Declaration of Trust, establishing an *inter vivos* trust (the "Trust"). The corpus of the Trust was the Property and the Rudloffs were the designated trustees. Under the terms of a quit claim deed, the Property was transferred to the Trust and into the Trust Estate.

Paragraph 1 of the Declaration of Trust named the Rudloffs' three children, Appellant Judith Scalfaro and Appellees Richard and James Rudloff, as equal one-third beneficiaries. In paragraphs 2 and 3, the responsibilities and interests of the beneficiaries were set forth. Paragraphs 4 and 5 specified the powers and rights the Rudloffs reserved, stating:

---

1. This matter was reassigned to this author.

4. We reserve unto ourselves the power and right at any time during our lifetime (1) to place a mortgage or other lien upon the [P]roperty and (2) to collect any rental or other income that may accrue from the trust property.....

5. We reserve unto ourselves the power and right at any time during our lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by us of the whole or any part of the [P]roperty held hereunder shall constitute as to such whole or part a revocation of the trust.

(Trial Stipulations at Exhibit 2). Paragraph 6 addressed the revocation of the beneficiary designation and termination of the Trust in the event that the beneficiaries predeceased the Rudloffs. Paragraph 7 addressed what role the survivor of the Rudloffs would assume, stating that "[i]n the event of the physical or mental incapacity or death of one of us, the survivor shall continue as sole Trustee." (Trial Stipulations at Exhibit 2).

Mrs. Rudloff died in October of 1996. On June 14, 2000, Mr. Rudloff executed and filed a deed conveying the Property to Appellees. Mr. Rudloff died on December 24, 2001. Appellees claimed ownership of the Property under the June 14, 2000 deed.

On June 19, 2003, Appellant filed a Complaint against Appellees in an Action to Quiet Title, alleging that given the terms of the Declaration of Trust, Mr. Rudloff, as sole trustee, was not authorized to convey the Property. Appellant requested that the June 14, 2000 deed be voided and cancelled, and that the Property be administered under the Declaration of Trust. Appellee Richard Rudloff ("Appellee Rudloff") filed an Answer, New Matter and Counterclaim, alleging that the Trust was revocable by both or either one of the Rudloffs and that Mr. Rudloff's conveyance of the Property on June 14, 2000 served to revoke the Trust and extinguish Appellant's rights in the Property. Appellee Rudloff requested that Ap-

pellant's action be dismissed and that the court quiet title in the Property in Appellees.

A bench trial was held on March 1, 2004. The trial court decided in Appellant's favor, and entered an order dated March 2, 2004, voiding the June 14, 2000 deed, canceling the June 14, 2000 deed as matter of record, and directing that the Property be administered in accordance with terms and conditions of the Trust. Appellee Rudloff filed post-trial motions, which were denied. He then lodged a timely appeal in the Superior Court, raising whether the trial erred in not recognizing that under the Declaration of Trust, Mr. Rudloff as sole trustee, had the power to revoke the Trust and did so, by conveying the Property.

In its Pa.R.A.P.1925(b) opinion, the trial court concluded that Appellee Rudloff's contention had no merit. The trial court recognized that a settlor may revoke or amend a revocable trust, provided that the power to revoke is reserved in the trust instrument's terms, and that the settlor's intent as to revocation is to be gathered from the language of the trust. (Trial Court opinion at 6), citing *In re Trust of Kaufmann*, 460 Pa. 24, 331 A.2d 209, 211 (1975). Applying these principles to the Declaration of Trust, the trial court noted that paragraph 5 used plural words to describe the power of revocation that the Rudloffs reserved and included no words to indicate that either one of the Rudloffs were authorized to revoke the Trust alone, and that paragraph 7 did not state that the surviving and sole trustee was empowered to change the Trust. (Trial Court opinion at 5–6.) Thus, the trial court concluded that the Declaration of Trust clearly vested the power to revoke the Trust in the Rudloffs jointly, that the action taken by Mr. Rudloff as sole trustee on June 14, 2000 was unauthorized, and that the conveyance of the Property by deed to Appellees was void. (Trial court opinion at 7.)

On appeal, in a published opinion, a divided panel of the Superior Court reached a different conclusion, and reversed the trial court's order. *Scalfaro v. Rudloff*, 884 A.2d 904 (Pa.Super.2005). Relying heavily on a decision rendered by the Supreme Court of Utah in *Matter of Estate of West*, 948

P.2d 351 (Utah 1997), the Superior Court majority focused on the second sentence in paragraph 5, which stated that "the sale or other disposition by us of the whole or any part of the [P]roperty held hereunder shall constitute as to such whole or part a revocation of the trust" and the direction in paragraph 7 that upon the death of one of the Rudloffs, the survivor would continue as sole trustee. The majority repeated the observation made by the Utah Court in *Estate of West* that the sale of trust property can be accomplished only by a trustee who holds legal title, and reasoned that since Mr. Rudloff retained the powers of a trustee when Mrs. Rudloff died, the Declaration of Trust must be interpreted to mean that Mr. Rudloff was authorized to convey the Property on his own. *Scalfaro*, 884 A.2d at 907–09. Accordingly, the majority concluded that Mr. Rudloff had the right to convey the Property, and that the conveyance Mr. Rudloff made on June 14, 2000, to Appellees extinguished the Trust and Appellant's rights in the Property. *Id.* at 910.

Judge Kelly dissented. *Id.* at 910–14 (Kelly, J. dissenting). Judge Kelly examined the language in the Declaration of Trust addressing the settlors' power to revoke and the context in which this power was set out, and concluded that the instrument gave the power to revoke to the Rudloffs jointly as settlors, and not to Mr. Rudloff as sole trustee. *Id.* at 910–15. Accordingly, Judge Kelly would have determined that the trust became irrevocable upon Mrs. Rudloff's death, and would have affirmed the trial court. *Id.* at 915.

■ This Court granted review to consider whether under the Declaration of Trust, Mr. Rudloff, acting as sole trustee, had the power to revoke the Trust. *Scalfaro v. Rudloff*, 590 Pa. 669, 912 A.2d 838 (2006).[2]

■ We begin with the principles that control in this area. Under Pennsylvania law, the power of revocation is a power that the settlor of the trust reserves. *In re Trust of*

---

2. This appeal raises a question of law. Our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Long*, 592 Pa. 42, 922 A.2d 892, 897 (2007).

*Kaufmann,* 460 Pa. 24, 331 A.2d 209, 211 (1975); *Damiani v. Lobasco,* 367 Pa. 1, 79 A.2d 268, 271 (1951). A settlor may revoke a trust, if and to the extent that power has been reserved in the trust instrument. *Id.* A trustee does not decide whether or how the power of revocation will be exercised. *See id.* The settlor's intent as to the power of revocation is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution, and the circumstances surrounding the execution of the instrument. *See Farmers Trust Co. v. Bashore,* 498 Pa. 146, 445 A.2d 492, 494 (1982). When a settlor of a trust reserves a power to revoke in a given manner and under certain conditions, revocation cannot be effected in another manner. *Damiani,* 79 A.2d at 271. A trust instrument that is unambiguous on a matter may not be superseded by extrinsic evidence of the settlor's intent. *Kaufmann,* 331 A.2d at 212.

■ The parties' respective arguments applying these principles are straight forward. Appellant points to paragraph 5 of the Declaration of Trust and asserts that the plural words therein clearly demonstrate an intent on the settlors' part that the power of revocation was to be exercised jointly. According to Appellant, paragraph 7 does not change this result because it neither grants nor reserves any powers, but rather, authorizes the surviving trustee to continue administration of the Trust. Appellee Richard Rudloff [3] counters that it never occurred to the Rudloffs that certain of the terms in the Declaration of Trust pertained to their powers as settlors and others related to their rights as trustees. Pointing to paragraph 7, Appellee argues that the Rudloffs must have meant that the survivor of them would have full and unlimited power over the Trust upon the death of the other, and intended for one or both of them to enjoy the power to revoke the Trust at any time and by any means, including by conveyance of the Property.

Our application of controlling principles leads us to Appellant's position. Turning to the Declaration of Trust, we see

---

**3.** Appellee James Rudloff did not file a brief.

that the powers of the settlors were set forth in paragraphs 4 and 5, with the latter addressing the power to revoke. The first sentence of paragraph 5 stated that the settlors reserved the power to revoke; the second sentence stated that a particular action, the sale or disposition of the corpus of the trust by them, amounted to a revocation.[4] In setting forth these provisions, paragraph 5 included only plural words and phrases, i.e., "[w]e reserve unto ourselves," "during our lifetime," and "sale or disposition [of the Property] by us...." There was no mention in paragraph 5 that the power of revocation could be exercised by either Mr. or Mrs. Rudloff alone or that either one of them could convey the Property on his or her own, either as sole trustee or surviving settlor. Indeed, no rights of survivorship were expressed in paragraph 5. The role the survivor of the Rudloffs would assume was covered in Paragraph 7. In this regard, Paragraph 7 contained only one authorization—that the survivor would continue as sole trustee—and made no reference to the power of revocation.

In our view, this language in the Declaration of Trust is clear and unambiguous in stating that the power of revocation was to be exercised by the Rudloffs jointly, and not by either one of them unilaterally as sole trustee.[5] Therefore, we hold

**4.** As we observed, *see supra* pp. 214–15, 937 A.2d at 1257, the Superior Court reasoned that because a trustee holds legal title and may dispose of the corpus of a trust, the Declaration of Trust necessarily meant that Mr. Rudloff, as sole trustee, could sell the Property on his own. The Superior Court's focus on the rights of a trustee was, however, in error. This appeal concerns the power to revoke that was reserved in the Declaration of Trust and how that power was to be exercised under that instrument.

**5.** Moreover, even if the terms of the Declaration of Trust were less than clear, as our respected colleague in the dissent would conclude, since paragraph 7 expressly provided that the right of the trustees would continue in the survivor, but is silent as to the rights of the settlors, we would conclude that survivorship rights in the settlors were denied under the maxim *expressio unius est exclusion alterius* (the expression of one item serves to the exclusion of other, non-expressed, items of the same general character). *See Farmers Trust*, 445 A.2d at 494 n. 3 (explaining that canons of construction will be applied when a settlor's intent cannot be ascertained with reasonable certainty and stating that "[a]lthough we find settlor's language to be unambiguous in the context of the entire trust instrument, we note that, even if settlor's language

that under the Declaration of Trust, Mr. Rudloff did not have the power to revoke the Trust as sole trustee, and accordingly, did not have the authority to convey the Property to Appellees in June of 2000.

For these reasons, the order of the Superior Court reversing the order of the trial court is reversed, and this matter is remanded to the Superior Court for remand to the trial court for reinstatement of the trial court's order and any necessary proceedings consistent with this opinion.

Justice CASTILLE and BAER, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice SAYLOR files a dissenting opinion in which Justice EAKIN joins.

Justice SAYLOR, dissenting.

In creating a trust for the ultimate benefit of their children, the Rudloffs used a form-book "living trust" document believed by the parties to have been obtained from a stationery store and executed without the benefit of legal advice. I respectfully differ with the majority's conclusion that the instrument is clear and definite; rather, I believe that the document is poorly drafted and materially ambiguous.

For purposes of this appeal, the critical portion of the declaration of trust is the revocation provision contained in its paragraph five, as follows:

We reserve unto ourselves the power and right at any time *during our lifetime* to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

(emphasis added). I view the central question in this appeal as whether the Rudloffs believed that the phrase "during our

were ambiguous in context, our canons of construction would mandate the same conclusion.").

lifetime," as well as other plural forms contained within this express reservation of a power to revoke, authorized revocation within the period of time representing the intersection of their individual lifetimes (in which case the power of revocation would not terminate upon the death of one spouse) or the broader period of time representing the union of their individual lifetimes (in which case the power of revocation would persist until the death of the survivor).

There are a number of suggestions within the declaration of trust that favor the latter interpretation. Significantly, the declaration of trust also employs the same and similar plural forms in other contexts in which it is reasonably clear that the intent was to refer to either or both of the settlors. For example, in paragraph one, the instrument provides for the appointment of a successor trustee upon physical or mental incapacity of the settlor/trustees "during our lifetime," and payment "to us" of income or principal "as may appear necessary or desirable for our comfort or welfare," with the trust property being transferred to the beneficiaries "[u]pon the death of the survivor of us." In paragraph four, the trust instrument reserves to the settlor/trustees the power and right "during our lifetime" to mortgage the premises and to collect rents and other income. Both of these paragraphs, in the context of the overall document, are reasonably read to convey a design to reserve the full benefit of the trust property to the surviving settlor, despite the use of the plural forms, as in the phrase "during our lifetime." This suggests that the use of identical phraseology in paragraph five, with reference to the power of revocation, also was intended to encompass either or both of the settlors.

As Appellee observes, the construction of the trust instrument that the majority adopts requires the Court to discern an intent that, should one of the settlors become incapacitated or die, the other would be deprived of the ability to revoke the trust and dispose of the property to address his or her life circumstances, such as infirmity caused by aging. As Appellee also notes, these sorts of form-book documents are frequently utilized by lay persons in an effort (albeit ineffectual)

to avoid inheritance taxation, and it seems counterintuitive that such persons would wish to divest their survivor of the full use of significant assets which might be essential to their care.

According to the majority, the survivorship issue is covered in paragraph seven of the declaration of trust. *See* Majority Opinion, *op.* at 216–17, 934 A.2d at 1258. Paragraph seven, however, is the trustee succession provision of the instrument. As Appellee stresses in his brief, trustees may terminate a trust, but only settlors have the power of revocation. Thus, I cannot agree with the majority that a provision explicitly addressed solely to trustee succession should also address itself to the power of revocation. Instead, paragraph five is explicitly the provision of the declaration of trust addressing the settlors' power of revocation, and I believe that the outcome of this case should be premised upon the resolution of the material ambiguity in that provision. *Cf.* Christian L. Barner, 17727 NBI–CLE 43, 95 (2004) ("Joint trusts are often poorly drafted, confusing the dispositive provisions of the respective settlors.").[1]

1. For the same reason, I also differ with the majority's suggested application of the doctrine of *expressio unius est exclusio alterius* to paragraph seven of the declaration of trust. *See* Majority Opinion, *op.* at 217 n. 5, 934 A.2d at 1258 n. 5. This canon of construction permits the exclusion of terms from an instrument by implication where other items of the same general character are expressed in the document, such that it would be reasonable to infer that the makers rejected the unmentioned terms. Again, however, the item addressed in paragraph seven (succession of trustees) is simply not of the same general character as that which the majority would exclude by implication (revocability by the settlors). Indeed, and again, the latter is actually addressed in another provision of the declaration of trust, namely, paragraph five, albeit in an ambiguous fashion. Therefore, it does not seem reasonable to infer that the makers would have addressed revocability within the inapposite content of paragraph seven. Rather, had the makers apprehended the ambiguity, it seems far more likely that they would have clarified their intent within the relevant provision (paragraph five).

I also have difficulty with implementing such a tenuous application of the *expressio unius* canon in a situation in which the instrument under review appears to be a generic, stationary-store document frequently purchased by lay persons with the single-minded purpose of attempting to avoid inheritance taxation. It does not appear to me to be reasonable to infer that persons in such circumstances intended to reject the prospect of a continuing power of revocation in their survivors merely because they acceded to a generic trustee succession provision.

In the face of a material ambiguity within a trust document, parol or extrinsic evidence of the settlor's intent may be considered to resolve ambiguity. *See Factor v. Getz*, 442 Pa. 384, 387–88, 276 A.2d 511, 512 (1971). In the absence of a sufficient manifestation of intent, consistent with a majority of other jurisdictions, Pennsylvania's common law reflected a presumption of irrevocability. *See In re Ingels' Estate*, 372 Pa. 171, 176, 92 A.2d 881, 883 (1952). *See generally* 20 Pa.C.S. § 7752 (Uniform Law Comment) ("Most states follow the rule that a trust is presumed irrevocable absent evidence of contrary intent.").[2] Notably, however, such common-law default rules are to be resorted to only where the courts are unable to discern a sufficient manifestation of intent of the settlors.[3]

Here, I conclude that, although the trust declaration is poorly drafted and ambiguous, the reasonable inferences arising from language used throughout the document, as dis-

**2.**   A contrary approach has emerged, which reverses the presumption in favor of revocability, as reflected in the Uniform Trust Code, approved and recommended by the National Conference of Commissioners on Uniform State Laws, and as adopted by the Pennsylvania General Assembly as Section 7752 of the Pennsylvania Uniform Trust Act. See 20 Pa.C.S. § 7752. The Uniform Law Comment explains, however, that such reversal applies "only for trusts created after [the] effective date," *see id.* (Uniform Law Comment), which, in this case, is November 6, 2006, well after the creation of the trust in issue.

**3.**   As explained by a court of common pleas:

[S]tarting some years ago, our Supreme Court has progressively diminished the effect of artificial [judicial] canons of construction, or presumptions of intent, and has mandated our courts to determine, from the document itself and from other circumstances known to a testator, his intent as expressed by the most natural and reasonable meaning of the words used: *Jessup Est.*, 441 Pa. 365, 276 A.2d 499 (1970). The problem with [judicial] canons of construction and arbitrary presumptions was that one which led to one result could always be met by one which led to the opposite result[.]

*In re Deacon Estate*, 2 Pa. D. & C.3d 711, 713 (Pa.Com.Pl., 1977).

Parenthetically, absent some constitutional infirmity, the courts are bound to apply *statutory* rules of construction concerning wills and trusts where they are implicated to the full extent intended by the Legislature. *See, e.g., In re Estate of Burger*, 587 Pa. 164, 178, 898 A.2d 547, 555 (2006) ("Given ... difficulties associated with presumptions [concerning testator intent], we find it most appropriate to adhere to the direction of the representative branch of government, where it is available.").

cussed above, are sufficient to overcome the common-law default presumption of irrevocability. Again, in light of the inadequate drafting of the declaration of trust, I reiterate that there remains a fair amount of uncertainty. My conclusion, to this point, is merely that the greater weight of the inferences concerning the Rudloffs' intentions that may reasonably be drawn from the document militate in favor of Appellees' position and, accordingly, the common-law presumption of irrevocability which would otherwise attach should not, in and of itself, control.

In light of the ambiguity, however, I believe that the common pleas court should have considered the extrinsic evidence offered by Appellant in its evaluation of Mr. and Mrs. Rudloff's intentions. *See Factor,* 442 Pa. at 387–88, 276 A.2d at 512. *See generally In re Scheidmantel,* 868 A.2d 464, 488 (Pa.Super.2005) (explaining that "the polestar in every trust is the settlor's intent and that intent must prevail" (quoting Restatement (Second) of Trusts § 2 (1957))). In this regard, Appellant testified that her parents created the trust strictly to thwart any possibility that any of their children would be divested of his or her share of the trust property, since, according to Appellant, Mrs. Rudloff had been unfairly deprived of her own inheritance upon her mother's death. *See* N.T., March 1, 2004, at 6. While this evidence was facially self-serving, the task of determining Appellant's credibility was initially for the common pleas court as fact finder. Additionally, although the testimony appears to have been hearsay, it was admitted into evidence without objection. Thus, the common pleas court should have assessed both the credibility and weight of the testimony in determining the Rudloffs' intentions concerning the potential for revocation of the trust by a surviving spouse. The court, however, circumvented this task by finding that the terms of the trust declaration were explicit in vesting the power to revoke only in the Rudloffs jointly. Since I differ with the common pleas court's (and the majority's) conclusion in this regard, I would return the matter to that court to complete the appropriate fact finding.

Finally, I recognize the policy indicated in *In re Solomon's Estate*, 332 Pa. 462, 2 A.2d 825 (1938), and highlighted by Judge Kelly, that "[i]t should not be in the power of either party after the death of the other to destroy the trust both created and both intended to subsist." *Id.* at 464, 2 A.2d at 826. I do not read *Solomon's Estate*, however, as overturning the longstanding principle that settlors may reserve the power to revoke in the trust instrument under any such terms and conditions as they may desire, within the bounds of legality, to include a conferral of individual power. Rather, I believe that *Solomon's Estate* reflects a resolution of the particular controversy before the Court and an affirmation of the common-law presumption of irrevocability, in the absence of a sufficient manifestation of intent to the contrary.

Justice EAKIN joins this dissenting opinion.