J-A09023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOAN I. GLISSON TRUST, BY JOAN I. GLISSON, TRUSTEE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THE GREATER DELAWARE VALLEY SAVINGS BANK, D/B/A ALLIANCE BANK, KITCHIN ASSOCIATES, LLC, TODD R. KITCHIN, RICHARD R. KITCHIN | |
| Appellants | No. 1880 EDA 2013 |

Appeal from the Judgment Entered August 15, 2013
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 09-003496

BEFORE:  BOWES, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 08, 2014**

The Greater Delaware Valley Savings Bank, d/b/a Alliance Bank ("Alliance Bank"), brings this appeal from the judgment entered on August 15, 2013, in the Court of Common Pleas of Delaware County, in favor of Joan I. Glisson, Trustee of the Joan Glisson Trust ("the Glisson Trust" or "the Trust"), in the amount of $294,103.06, together with post-judgment interest, and further assessment of counsel fees and costs.[1] The judgment was entered on the verdict issued after a one-day non-jury trial in this action

---

[1] Although Kitchin Associates, LLC, Todd R. Kitchin, and Richard R. Kitchin ("Kitchen Associates") appear as appellants in the above caption, judgment was entered against Alliance Bank only, and Kitchin Associates are not parties to this appeal.

for breach of contract and negligence. In this appeal, Alliance Bank raises five questions, which we rephrase as follows: (1) Whether the Commercial Pledge Agreement and Commercial Guaranty signed by the Trust created an express contract of bailment; (2) Whether the Commercial Pledge Agreement could be interpreted as creating an express obligation to return an assigned mortgage to the Trust; (3) Whether the Trust's contract claims are controlled by the four-year statute of limitations set forth in 42 Pa.C.S. § 5525(7), rather than the 20-year statute of limitations set forth at 42 Pa.C.S. § 5529; (4) Whether Alliance Bank was obligated to satisfy all mortgages held as collateral for its original loan, pursuant to the Mortgage Satisfaction Act, 21 Pa.C.S. § 721-1 *et seq.*; (5) Whether the Trust had standing to assert the claims against Alliance Bank. *See* Alliance Bank's Brief, at 4. Based upon the following, we affirm.

This action arose after Alliance Bank caused a purchase money mortgage, assigned by the Trust to Alliance Bank as substitute collateral for a business loan obtained by M & J Roofing Supplies, Inc., to be marked satisfied, instead of returning the mortgage to the Trust, following full repayment of the business loan. The trial court has aptly summarized the facts underlying this appeal, as follows:

Joan I. Glisson is the grantor, trustee and a beneficiary of the Joan I. Glisson Trust (herein "the Glisson Trust" or "the Trust"). Alliance Bank is a wholly owned subsidiary of Alliance Bancorp, Inc. of Pennsylvania, and is registered to conduct business in Pennsylvania, having a business location at 541 Lawrence Road, Broomall, Marple Township, Delaware County,

Pennsylvania, (herein "Alliance Bank"). Kitchin Associates, LLC., is a defunct limited liability company which formerly conducted business at 1400 Chester Pike, Sharon Hill Borough, Delaware County, Pennsylvania, (herein "Kitchin Associates"). Todd R. Kitchin, is an adult individual who was a member and agent of Kitchin Associates, (herein "Todd Kitchin"). Richard R. Kitchin, is an adult individual who was a member and agent of Kitchin Associates, (herein "Richard Kitchin").

On February 7, 2000, the Glisson Trust, which was created in 1996, was the owner under a deed of commercial real estate known generally as 1400 Chester Pike, Sharon Hill Borough, Delaware County, Pennsylvania. At that time, Joan I. Glisson and her late husband, Maurice J. Glisson, were the corporate Treasurer and President respectively of two Pennsylvania business corporations, M & J Roofing Supplies, Inc., and J & M Window Manufacturing.

On February 7, 2000, Joan I. Glisson and Maurice J. Glisson entered into a written business loan agreement with Alliance Bank to obtain $300,000.00 for the use of M & J Roofing Supplies, Inc. The business loan Promissory Note was secured, in part, by a mortgage upon the 1400 Chester Pike, Sharon Hill Borough premises given to Alliance Bank, by the Glisson Trust.

On June 1, 2001, Kitchin Associates entered into a written agreement for the sale of real estate with the Glisson Trust, concerning the 1400 Chester Pike, Sharon Hill Borough premises. On July 3, 2001, at the request of the late Maurice Glisson, Alliance Bank agreed to accept an Assignment of the Kitchin Associates Promissory Note and Mortgage to the Glisson Trust as substitute collateral for the M & J Roofing Supplies, Inc., business loan, in exchange for Alliance Bank releasing its mortgage upon the 1400 Chester Pike, Sharon Hill Borough premises. On July 5, 2001, Alliance Bank released its mortgage upon the 1400 Chester Pike, Sharon Hill Borough premises, and accepted the assignment of the Kitchin Associates Promissory Note and Mortgage to the Glisson Trust as substitute collateral. On July 11, 2001, the Glisson Trust conveyed the 1400 Chester Pike, Sharon Hill premises to Kitchin Associates for $300,000.00. On July 11, 2001, the Glisson Trust, by Joan I. Glisson, Trustee, executed the documents required by Alliance Bank including an assignment of the Kitchin Associates to Glisson Trust mortgage, necessary to complete the substitution of collateral.

On July 11, 2001, the Glisson Trust executed the Commercial Guaranty. The Commercial Guaranty is secured by collateral. In part, the Commercial Guaranty provides as follows: "This Guaranty is secured by Assignment of $300,000.00 Promissory Note and Purchase Money Mortgage from Kitchin Associates, LLC, dated July 11, 2001, and covering the property known as 1400 Chester Pike, Borough of Sharon Hill, Delaware County, Pennsylvania, Parcel No. 41-00-00335-00, and any and all proceeds thereof. Property description attached hereto."

On July 11, 2001, Alliance Bank secured the Commercial Guaranty executed by the Glisson Trust by requiring the Glisson Trust to execute the Commercial Pledge Agreement. In part, the Commercial Pledge Agreement provides as follows: "Lender may hold the Collateral until all indebtedness has been paid and satisfied. Thereafter, Lender may deliver the Collateral to Grantor or to any other owner of the Collateral." The Commercial Guaranty and the Commercial Pledge Agreement each relate to a loan transaction between Alliance Bank, as lender, and M & J Roofing Supplies, Inc. The loan transaction took place on February 7, 2000, when Joan I. Glisson, who is the grantor, trustee and a beneficiary of the Glisson Trust, and her late husband, Maurice J. Glisson, executed a business loan agreement as officers of M & J Roofing Supplies, Inc., borrowing $300,000.00 from Alliance Bank.

On March 31, 2003, Joan I. Glisson and Maurice J. Glisson paid the M & J Roofing Supplies, Inc. loan balance due Alliance Bank, in full. On April 30, 2003, Maurice J. Glisson died. In error, on May 30, 2003, Alliance Bank through its employees prepared a satisfaction piece for the Kitchin Associates to Glisson Trust mortgage, the above referenced substituted collateral for the Alliance Bank loan to M & J Roofing Supplies, Inc.

On June 2, 2003, Alliance Bank marked as satisfied the M & J Roofing Supplies, Inc., loan of February 7, 2000; but, rather than return the Kitchin Associates to Glisson Trust Mortgage — the substituted collateral — to the Trust on June 3, 2003, Alliance Bank filed the satisfaction piece prepared in error and mistakenly satisfied the Kitchin Associates mortgage.

On March 3, 2005, and without the knowledge of the Glisson Trust, Kitchin Associates sold the 1400 Chester Pike,

Sharon Hill premises to CLAM Enterprises, LLC, for $402,000.00. At closing on the sale of the premises, Kitchin Associates, Richard R. Kitchin and Todd R. Kitchin kept the net proceeds of the sale including the balance then outstanding on the Kitchin Associates July 11, 2001, loan to the Glisson Trust.[3]

---

[3] This Court ultimately determined that Kitchin Associates, Richard Kitchin and Todd Kitchin, each acted intentionally and unlawfully in dissipating the proceeds from the sale of the 1400 Chester Pike, Sharon Hill premises.

---

On or about September 8, 2008, Kitchin Associates, Richard R. Kitchin and Todd R. Kitchin ceased payment to the Glisson Trust on the Kitchin Associates Promissory Note of July11, 2001, and the Glisson Trust discovered the Kitchins' wrong doing. On or about September 8, 2008, the Trust discovered the outstanding principal balance of $201,287.73 on the Kitchin Associates Promissory Note of July 11, 2001, was uncollectable because Alliance Bank's mistaken satisfaction of the Kitchin Associates Mortgage destroyed the security interest the Glisson Trust would have had in the 1400 Chester Pike, Sharon Hill Borough premises. Following their default, Kitchin Associates, Richard R. Kitchin and Todd R. Kitchin pursued bankruptcy protection. The Glisson Trust recovered $51,500.00 of its loss in the Todd R. Kitchin bankruptcy proceeding.

The Glisson Trust has never been revoked, and Joan I. Glisson who is the Grantor of this Trust remains the trustee and beneficiary of the Trust. In her management of the Glisson Trust as trustee, Joan I. Glisson has acted consistently with the advice of estate legal counsel. The Commercial Pledge Agreement was signed on behalf of the Glisson Trust in favor of Alliance Bank. The Commercial Pledge Agreement directs the Glisson Trust to deliver the pledged collateral to Alliance Bank, and the pledge agreement directs Alliance Bank to return the pledged collateral to the Glisson Trust once the M & J Roofing Supplies, Inc., business loan Promissory Note of February 7, 2000, is paid in full.

…

At trial, the Glisson Trust asserted that Alliance Bank failed to adequately protect the collateral it delivered to the bank and failed to return the collateral to the Trust in breach of the Commercial Pledge Agreement. The Glisson Trust also alleged that Alliance Bank was negligent and the negligent conduct of Alliance Bank was a factual cause resulting in the damages sustained by the Plaintiff.

Trial Court Opinion, 9/12/2013, at 1–5 (record citations omitted).

The trial court concluded that the Trust proved a material breach of contract by Alliance Bank within the meaning of Restatement Second of Contracts, § 241 ("Circumstances Significant in Determining whether a Failure Is Material."). The trial court further determined that the Trust had proved negligence and damages, and that it did not recognize the negligence until September 8, 2008, when Kitchins Associates defaulted on the promissory note, but concluded that the two-year statute of limitations, 42 Pa.C.S. § 5524(7), barred the Trust's negligence claim.[2] The court's verdict in favor of the Trust totaled $294,103.06, together with post-judgment interest and further assessment of counsel fees and costs. Following the

---

[2] The trial court rejected the Trust's argument that, "under the circumstances presented in this case, the Trust did not know it had been harmed through the negligent act of Alliance Bank, and for this reason, the discovery rule applies tolling the statute of limitations." Trial Court Opinion, 9/12/2013, at 11. The trial court held: "The Glisson Trust knew the Kitchin Associates purchase money mortgage was satisfied in June 2003. The discovery rule has no application in this case, and the Trust's negligence action is barred by the two year statute of limitations." *Id.*

denial of Alliance Bank's motion for post-trial relief pursuant to Pa.R.C.P. 227.1, this appeal by Alliance Bank followed.[3]

At the outset, we note our standard of review:

> [We are] limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.
>
> The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, "unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence."
>
> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.
>
> "To the extent that the trial court's findings are predicated on errors of law, we review the court's findings *de novo.*"

*Hart v. Arnold*, 884 A.2d 316, 330–331 (Pa. Super. 2005) (citations omitted).

_____

[3] Alliance Bank timely complied with the order of the trial court to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

As the first two arguments raised by Alliance Bank concern the commercial loan documents, we discuss those arguments together. Alliance Bank first contends the verdict and judgment were erroneously based upon the common law doctrine of bailment. Secondly, Alliance Bank contends the trial court impermissibly reformed the commercial loan documents.

In finding in favor of the Trust, the trial court opined:

> To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. **Hart v. Arnold**, 884 A.2d 316, 332 (Pa. Super. Ct. 2005). A breach must have been a material breach of the contract. In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he or she reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he or she will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or offer to perform will cure his or her failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing. **Oak Ridge Constr. Co. v. Tolley**, 504 A.2d 1343, 1348 (Pa. Super. Ct. 1985) citing Restatement (Second) of Contracts § 241 (1981).
>
> On May 3, 2013, Kathleen Lynch, an employee of Alliance Bank testified during the trial of this civil action. Through her testimony, Kathleen Lynch demonstrated specific knowledge of the applicable Alliance Bank procedures and protocols for the safe keeping and management of pledged collateral. Ms. Lynch identified the various Alliance Bank officers and employees who participated in the various dealings and transactions between Alliance Bank and the Glisson Trust. Kathleen Lynch admitted Alliance Bank made a mistake when, following the payment in full of the M & J Roofing Supplies, Inc., business loan Promissory

Note of February 7, 2000, an employee of Alliance Bank satisfied the Kitchin Associates Mortgage rather than returning the Kitchin Associates Mortgage to the Glisson Trust as required by the terms of the Commercial Pledge Agreement. The mistaken or negligent conduct of the Alliance Bank employee rendered valueless the incorporeal property delivered to Alliance Bank by the Glisson Trust. This Court found the testimony offered at trial by witness, Kathleen Lynch, to be credible.

This Court ultimately determined that the Glisson Trust proved by a preponderance of the evidence as follows:

(a) The Glisson Trust delivered the pledged collateral - - the Kitchins' purchase money mortgage - - to Alliance Bank;

(b) M & J Roofing Supplies, Inc., paid in full the indebtedness due Alliance Bank under the terms of the commercial loan agreement;

(c) As a Guarantor of that Alliance Bank loan, Glisson Trust had completed its performance under the express terms of the Commercial Guaranty and the Commercial Pledge Agreement (Plaintiff Exhs. R and S-1);

(d) Glisson Trust, as the owner of the pledged collateral, was entitled to the return of the collateral on or about June 2, 2003;

(e) Alliance Bank failed to exercise or use reasonable care in the preservation of the collateral when its employee mistakenly or carelessly caused the collateral - - the Kitchins' purchase money mortgage - - to be marked satisfied rather than delivering that collateral back to the Glisson Trust through an appropriate reassignment of that purchase money mortgage; and,

(f) As the injured party, the Glisson Trust was deprived of its security interest in the 1400 Chester Pike, Sharon Hill Borough premises exposing Plaintiff to a significant financial loss.

The Glisson Trust proved a material breach of contract by Alliance Bank within the meaning of Restatement (Second) of

- 9 -

Contracts § 241 (1981). The Commercial Guaranty and the Commercial Pledge Agreement between Plaintiff Glisson Trust and Defendant Alliance Bank created a bailment by express contract. "Bailment" is defined as a delivery of personalty for the accomplishment of some purpose upon contract, express or implied. After that purpose has been fulfilled, the personal property shall be delivered to its owner, otherwise handled according to its owner's directions, or kept until reclaimed by the owner. When a bailment is for a mutual benefit of the bailor, here the Glisson Trust, and bailee, here Alliance Bank, the bailee must use ordinary diligence and is liable for ordinary negligence. *Prince v. Brown*, 680 A.2d 1149 (Pa. 1996). In the instant case, the Commercial Pledge Agreement imposed a duty to "use ordinary reasonable care" upon Alliance Bank, as Lender, in its maintenance of the collateral. (Plaintiff Exh. S-1 pg. 2.) On termination of a bailment, the bailor, here Glisson Trust, is entitled to the return of the identical thing bailed. *Schell v. Miller North Broad Storage Co.* 16 A.2d 680 (Pa. Super. Ct. 1940). Here, the Glisson Trust, the bailor, did not receive from Alliance Bank, the bailee, a return of the Kitchins' purchase money mortgage, the thing bailed, in breach of the Collateral Pledge Agreement and in breach of long standing law in the Commonwealth of Pennsylvania concerning the bailment of corporeal or incorporeal personal property. When a bailee fails to act as required in the contract of bailment and the result is a loss of the subject of the bailment, that bailee is liable to the bailor of the property.

Trial Court Opinion, 9/12/2013, at 6–8 (record citations omitted). For the reasons set forth below, we find no error.

Alliance Bank contends the court's determination — that "[t]he Commercial Guaranty and the Commercial Pledge Agreement between Plaintiff Glisson Trust and Defendant Alliance Bank created a bailment by express contract"[4] — constitutes reversible error because bailment was

---

[4] Trial Court Opinion, 9/12/2013, at 8.

- 10 -

never pled, and the court had no authority to raise it *sua sponte*. Alliance Bank further maintains that the elements for a bailment were not established in this case. Specifically, Alliance Bank argues:

> Our Supreme Court has detailed the elements required to establish rights under a bailment agreement as follows:
>
>> [A] cause of action for breach of a bailment agreement arises if the bailor can establish that *personalty* has been delivered to the bailee, a *demand for return of the bailed goods has been made* and the bailee has failed to return the personalty. (emphasis added).
>
> ***Price v. Brown***, 680 A.2d 1149, 1152 (Pa. 1996). The evidence in this case unequivocally demonstrates that neither of the elements required to establish a valid cause of action for breach of a bailment agreement was proven at trial.

Alliance Bank's Brief, at 21. Alliance Bank claims that the Kitchin mortgage is not "personalty," and that the Trust made no "demand" for return of the mortgage. We are not persuaded by this argument.

We conclude the court's bailment analogy provides no basis upon which to disturb the decision of the trial court. Moreover, our review confirms the trial court's determination that, based upon the commercial loan documents, the Trust established a material breach by Alliance Bank of its contractual obligation to return the assigned mortgage to the Trust. In this regard, we reject Alliance Bank's assertion that the trial court impermissibly reformed the commercial loan documents.

Turning to the documents at issue, the Commercial Guaranty states, in relevant part:

COLLATERAL. This Guaranty is secured by Assignment of $300,000 Promissory Note and Purchase Money Mortgage from Kitchin Associates, LLC., dated July 11th, 2001, and covering the property known as 1400 Chester Pike, Borough of Sharon Hill, Delaware County, PA, Parcel No. 41-00-00335-00, and any and all proceeds thereof. Property description attached hereto.

****

LIMITED OBLIGATION OF GUARANTOR. The Joan I. Glisson Trust of 1996, (the Trust), granted a Mortgage and Assignment of Rents dated February 7, 2000 on the property known as 1400 Chester Pike, Borough of Sharon Hill, Delaware County, PA. to support a Loan by Lender to M & J Roofing Supplies, Inc. The Trust has agreed to sell the property to Kitchin Associates, LLC for $300,000 and as consideration for the sale the Trust will take back a $300,000 Note and Mortgage. The Trust has asked the Lender [Alliance Bank] to remove the existing Mortgage, permit the Deed to be transferred to Kitchin Associates, LLC and to receive this Guaranty, and an Assignment of Note and Mortgage as substitute collateral. Lender hereby agrees to the collateral substitution and further agrees to limit the obligations of the Trust under Guaranty to the collateral known as 1400 Chester Pike[,] Sharon Hill, PA and any and all proceeds thereof.

Commercial Guaranty, 7/11/2001.

Furthermore, the Commercial Pledge Agreement contains the following terms:

GRANT OF SECURITY INTEREST: For valuable consideration, Grantor [Joan I. Glisson Trust of 1996] grants to Lender [Alliance Bank] a security interest in the collateral to secure the indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means Grantor's present and future rights, title and interest in and to, together with any and all present and future additions thereto, substitutions therefore, and replacements thereof, and further together with all income and Proceeds as described herein:

Assignment of a certain $300,000 Promissory Note and Purchase Money Mortgage dated July 11, 2001 from Kitchin Associates, LLC to the Joan I. Glisson Trust of 1996.

****

LENDER'S RIGHTS AND OBLIGATION WITH RESPECT TO COLLATERAL. ***Lender may hold the Collateral until all indebtedness [the M & J Roofing Supplies, Inc. loan] has been paid and satisfied. Thereafter, Lender may deliver the Collateral to Grantor [the Trust] or to any other owner of the Collateral. ...***

****

LIMITATIONS ON OBLIGATIONS OF LENDER. Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. …

Commercial Pledge Agreement, 7/11/2001 (emphasis supplied).

The guaranty and pledge agreement reflect the parties' intent (1) that Alliance Bank would release its mortgage against the Trust's property, 1400 Chester Pike, which was collateral for the M & J Roofing Supplies, Inc. loan; (2) that the Trust would sell the property at 1400 Chester Pike to Kitchin Associates, LLC, for $300,000.00; (3) that the Trust would take back a note and mortgage from Kitchin Associates, LLC, for $300,000.00; and (4) that the Trust would assign the Kitchin mortgage and note to Alliance Bank as substitute collateral for the $300,000.00 business loan from Alliance Bank to M & J Roofing Supplies, Inc.

Although Alliance Bank argues that use of the word "may" in the pledge agreement indicates that return of the mortgage was permissive and not mandatory, we find this argument to be groundless. It is obvious that the assignment of the Kitchin Mortgage was pledged as substitute collateral for the M & J Roofing Supplies, Inc., business loan, until full repayment of the loan. As such, the pledge agreement obligated Alliance Bank to deliver the substitute collateral — the assigned mortgage — to the Trust, or any other owner of the collateral, upon full repayment of the loan. Even though the provision regarding "Lender's Rights and Obligation With Respect to Collateral," uses the word "may," Alliance Bank would have no right to retain the collateral once the loan is repaid in full, and Alliance Bank offers no valid support to the contrary.[5] Therefore, the Trust was entitled to return of the Kitchin mortgage on or about June 2, 2003, when Alliance Bank marked as satisfied the M & J Roofing Supplies, Inc., loan of February 7, 2000.[6]

_____

[5] As will be discussed more fully below, Alliance Bank's position that it was obligated to satisfy the mortgage pursuant to the Mortgage Satisfaction Act is unavailing.

[6] We note that Alliance Bank also cites provisions set forth in the pledge agreement, under the headings, "Maintenance and Protection of Collateral," and "Limitations on Obligations of Lender," in support of its argument that the trial court, by finding that the pledge agreement created a mandatory obligation on the part of Alliance Bank to return the assigned mortgage to the Trust, impermissibly reformed the pledge agreement. *See* Alliance Bank's Brief, at 25–27.

Alliance Bank relies on language in the provision regarding "Maintenance and Protection of Collateral," which specifies, "Lender may, but
*(Footnote Continued Next Page)*

Based on our review, we agree with the trial court that, in light of the guaranty, and given terms of the pledge agreement, the Trust established a material breach of contract on the part of Alliance Bank in causing the Kitchin mortgage to be marked satisfied, instead of delivering the assigned mortgage and note to the Trust. Accordingly, we reject Alliance Bank's first two arguments.

Nor do we find merit in the contention of Alliance Bank that the court erred in applying the 20-year statute of limitations found in 42 Pa.C.S. § 5529 for a document "under seal." In this regard, we reject Alliance Bank's argument that the four-year statute of limitations set forth in 42 Pa.C.S. § 5525(7) is applicable, and bars the Trust's contract claim.

Section 5525(7) of the Judicial Code provides a four-year statute of limitation for "An action upon a negotiable or nonnegotiable bond, note or other similar instrument in writing. …." 42 Pa.C.S. § 5525(7). However, Section 5529 states, in relevant part, "Notwithstanding section 5525(7)

_____
*(Footnote Continued)*

shall not be obligated to take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral." In addition, Alliance Bank points to the "Limitations on Obligations of Lender" provision that states, "Lender shall have no responsibility for (A) any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (B) preservation of rights against the parties to the Collateral or against third persons, ….".

Having reviewed these provisions, we conclude Alliance Bank's reliance is misplaced, as we find these provisions regarding collateral are not relevant after the loan has been fully repaid.

(relating to four year limitation), an action upon an instrument in writing under seal must be commenced within 20 years." 42 Pa.C.S. § 5529(b)(1).

In this case, the last sentence of the pledge agreement specified: "**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**" Commercial Pledge Agreement, 7/11/2001 (capitalization and bold in original). Similarly, the last sentence of the guaranty stated: "**THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**" Commercial Guaranty, 7/11/2001 (capitalization and bold in original). It is undisputed that "Joan I. Glisson, Trustee" placed her signature on the signature line for the Trust, on both the pledge agreement and the guaranty, immediately below the above-quoted wording. Alliance Bank, however, claims that since Alliance Bank was not a signatory to these commercial loan documents, the four-year statute of limitations is applicable, and not the 20-year statute of limitations for instruments in writing under seal. We find this argument to be meritless.

It bears mention that the guaranty and pledge agreement, which were prepared by Alliance Bank, and signed by Trust in favor of Alliance Bank, contained only one signature line — for the "Joan I. Glisson Trust of 1996." In addition, "this Court has held, in accord with many cases written by our Supreme Court, that when a party signs an instrument which contains a pre-

printed word 'SEAL,' that party has presumptively signed an instrument under seal." *In re Estate of Snyder*, 13 A.3d 509, 513 (Pa. Super. 2011), *quoting* **Beneficial Consumer Discount v. Dailey**, 644 A.2d 789, 790 (Pa. Super. 1994). As Alliance Bank has not rebutted the presumption that the maker of the instrument, the Trust, adopted the seal, it is presumed to have been signed under seal. **See Klein v. Reid**, 422 A.2d 1143, 1144 (Pa. Super. 1980). Furthermore, there is no restriction in Section 5529 based upon which party is bringing suit or seeking the benefit of the limitation period. Accordingly, we conclude the trial court properly ruled the 20-year statute of limitation at 42 Pa.C.S. § 5529 was applicable herein.

In the fourth issue raised on appeal, Alliance Bank claims that the trial court erred in failing to apply the Mortgage Satisfaction Act. According to Alliance Bank, "[w]hen the M & J Roofing Supplies, Inc. loan was paid in full and the fees to satisfy the liens [were] delivered, [Alliance Bank] was obligated to satisfy all mortgages it was holding as collateral in accordance with 21 Pa.C.S. § 721-4." Alliance Bank's Brief, at 30. The trial court, in rejecting this argument, opined: "This defense on its face is without merit. [Alliance's] obligation under the Commercial Pledge Agreement was to reassign the Kitchins' purchase money mortgage to [the Trust] in June 2003." Trial Court Opinion, 9/12/2013, at 10. We agree with the trial court, and find no merit in the argument of Alliance.

Section 721-4 of the Mortgage Satisfaction Act provides: "Every mortgagee shall, upon receipt of payment of the entire mortgage obligation

and tender of all required satisfaction and recording costs, [etc.] .. present for recording … a duly executed satisfaction piece." 21 Pa.C.S. § 721-4. As already discussed, under the pledge agreement, the Trust had assigned the Kitchin mortgage as substitute collateral for the M & J Roofing Supplies, Inc. business loan, and once the loan was fully repaid, Alliance Bank was required to return the Kitchin mortgage and note to the Trust. While 20 Pa.C.S. § 721-2(1) defines a "mortgagee" as "the current holder of the mortgage or the current holder of the mortgage and note," Section 721-4 is not applicable to the present scenario. Here, Alliance Bank was not a true assignee entitled to mortgage payments, but was merely a holder of the Kitchin mortgage as collateral, with no entitlement to mortgage payments. Accordingly, we reject Alliance Bank's reliance upon the Mortgage Satisfaction Act.

Finally, Alliance Bank claims the Trust lacked standing to assert its claims against Alliance Bank. In this regard, Alliance Bank has summarized its argument as follows:

> [T]he Trial Court refused to acknowledge that the Joan I. Glisson Trust of 1996 was dissolved, and assigned the right to income from the assigned Kitchin Mortgage to a new trust in 2002. Inasmuch as the Trust no longer existed, and had no rights with respect to the income secured by the assigned Kitchin Mortgage, the Trust lacked standing to initiate this action, much less be entitled to a money judgment.

Alliance Bank's Brief, at 17.

- 18 -

More specifically, Alliance Bank asserts that Joan I. Glisson "testified, at deposition, that the Trust was dissolved, and the assets transferred to a new trust created in 2002." Alliance Bank's Brief, at 34. Alliance Bank also points to trial exhibit MM, entitled "Additional Special Directives of Maurice J. Glisson and Joan I. Glisson, Trustees and Settlors of the Maurice J. and Joan I. Glisson Revocable Living Trust," 8/5/2002, which specified: "I direct that **JESSE GLISSON** get the mortgage payment from the property located at 1400 Chester Pike, Sharon Hill, Pennsylvania." **See** Alliance Bank's Brief, **id.** Notwithstanding that 20 Pa.C.S. § 7752 is specifically applicable to revocable trusts, Alliance Bank cites Section 7740(a) of the Uniform Trust Act, which provides:

> A trust terminates to the extent it is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved or the purposes of the trust have become unlawful or contrary to public policy. …

20 Pa.C.S. § 7740(a). In reliance on the above quoted statute, Alliance Bank contends "[t]he Plaintiff Trust ceased to have a purpose when all of its assets were transferred to a new trust." Alliance Bank's Brief, at 35. Alliance Bank concludes "[a]ny claim which may have arisen by virtue of [Alliance Bank's] satisfaction of the assigned instrument belonged to a different trust." **Id.** at 35.

Here, the trial court determined that "[t]he Glisson Trust has never been revoked, and Joan I. Glisson who is the Grantor of this Trust remains

the trustee and beneficiary of the Trust." Trial Court Opinion, 9/12/2013, at 5. We find no error.

Preliminarily, we note there is no prohibition to having more than one revocable trust. The 2002 trust document contains no provision that it is replacing the Trust nor that any assets owned by the Trust were transferred to the 2002 trust in which **both** Maurice J. Glisson and Joan I. Glisson were the settlors. Therefore, the trial court was entitled to consider the testimony of Joan I. Glisson at her deposition that the Trust had been "dissolved" as a statement by a layperson.

Furthermore, the "Additional Special Directives," discussed above, must be read in conjunction with the "Special Directives" of each settlor,[7] all of which contemplate the division of trust assets after the death of a settlor. The direction that Jesse Glisson receive mortgage payments at some point in the future does not require the assignment of the Kitchin mortgage to the 2002 Trust any more than a right of a beneficiary to receive dividends from a stock requires the transfer of the stock.[8] Therefore, Alliance Bank's claim that "all of [the Trust's] assets were transferred to a new trust" is unsupported by the record.

---

[7] **See** Revocable Living Trust Agreement, at 28–32, 8/5/2002 (trial exhibit KK).

[8] **See** Pennsylvania Principal and Income Act, 20 Pa.C.S. § 8101 *et seq*.

Finally, "[w]hen a settlor of a trust reserves a power to revoke in a given manner and under certain conditions, revocation cannot be effected in another manner." *Scalfaro v. Rudloff*, 934 A.2d 1254, 1257 (Pa. Super. 2007). *See* 20 Pa.C.S. § 7752(c)(1) (providing settlor may revoke or amend a revocable trust only "[b]y substantial compliance with a method provided in the trust instrument." (citation omitted)). The Trust instrument provides that the Trust terminates upon either the death of both the Grantor (Joan I. Glisson) and her spouse, Maurice Glisson, or as expressly provided in Paragraph 18, which states:

> The Trust shall be revocable by the Grantor at any time, and either in whole or in part. The Grantor may, in addition, amend or modify this trust at any time, in any way whatever. Any such revocation, amendment, or modification shall be made by a written and acknowledged instrument delivered to the acting Trustees.

Trust Instrument, Joan I. Glisson Trust of 1996, 3/28/1996, at 8 ¶18.

Here, the method provided in the Trust for revocation was mandatory and exclusive, and Alliance Bank does not contend that the Joan I. Glisson Trust of 1996 was revoked in accordance with the above quoted provision. Therefore, for the above reasons, we conclude the trial court properly determined that the Trust was not revoked, and correctly rejected Alliance Bank's argument that the Trust lacked standing in this case.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/2014